STATE NATIONAL LOAN AND TRUST COMPANY v.
SILAS FULLER ET AL.

Decided May 8, 1901.

1.—Practice on Appeal—Presumption as to Facts.

Where there was no request to submit any other issue to the jury, and the answers of the jury were responsive to the issues submitted, and neither the agreed facts nor the special verdict furnished the facts necessary to form a basis for the judgment, the court is presumed to have found the facts essential to support the judgment, if they appear in the statement of facts.

2.—Building and Loan Associations—Usury—Premium.

The premium which the by-laws of a building and loan association require to be bid on loans made by it, should be taken into consideration in determining whether the loan contract bears a usurious rate of interest. See contract of a borrowing stockholder of such association held to call for more than 12 per cent interest.

3.—Same.

A contract for the usurious interest due on another contract is also usurious.

4.—Same—Original Contract Not Tainted.

Where notes secured by a vendor's lien were transferred to a building and loan association, and afterwards to defendant with the express provision that defendant should be subrogated to the rights of the original vendor, the fact that a subsequent usurious agreement was made with reference to the debt would not affect the original contract evidenced by the notes, or the interest due thereon.

5.—Same—Subrogation—Credits.

Where plaintiff subscribed to the stock of a building and loan association and borrowed therefrom money with which to pay off a vendor's lien on his property, agreeing with the association to pay 6 per cent per annum interest and 1 per cent per month as premium and sinking fund, the compensation thus to be paid being usurious, and subsequently the association transferred the loan to a third party with the right of subrogation under the original lien, the premium, interest and sinking fund paid by plaintiff should be credited at the time of payment on the original note.

·6.—Same—Right of Offset.

Where a building and loan association transfers notes and a lien on land ·to defendant, and the maker of the notes was a stockholder in the association, .he would have no right, on obtaining judgment against the association for the ·value of his stock, to offset this against the debt so transferred.

7.—Same—Transfer of Business—Stockholder Estopped.

Where a stockholder of a building and loan association was present at a meeting thereof at which its property, including a debt he was owing it, was transferred to a third party, resulting in its suspension of business, and he made no objection thereto, he is estopped thereby from claiming credit for his shares of stock on such debt, he not being included by the agreement among the ·class of stockholders who were to be paid anything by such transferree.

Appeal from Grayson.   Tried below before Hon. Don A. Bliss.

*Armstrong & Hanger,* for appellant.

*N. H. L. Decker,* for appellee.

FLY, ASSOCIATE JUSTICE.—Silas Fuller instituted suit in the Dis-·trict Court of Grayson County to cancel certain liens held by the North Texas Saving and Building Association and the appellant, alleging that ·on September 22, 1894, plaintiff borrowed from the saving and building association, which will in the further course of this opinion be termed the association, the sum of $900 and no more; that in consideration 'of ·the loan the association exacted of plaintiff a contract binding him to pay said association the sum of $16 for 100 months in paying off and ·discharging the debt; that plaintiff executed a mortgage and mechanic's lien to the association on the property to secure the debt; that the con- tract was usurious and void as to interest; that plaintiff took stock in the association for the sole purpose of obtaining a loan, and not as an investment.   It was also alleged that the State National Loan and 'Trust Company, hereinafter denominated appellant, purchased the con- tract of plaintiff with full notice of its usurious nature; that all of the indebtedness had been paid off, except $70, which was tendered into court. To the petition was attached an itemized account which showed the pay- ment of $800 in monthly installments, and $30 in advance payment. No answer was filed by the association.

Appellant answered by general demurrer and general denial, and ·further set up a compromise agreement made by Silas Fuller, whereby, in adjustment of all differences between him and the association, he agreed that he was indebted to the association in the sum of $688, and ·requested appellant to purchase the contract, and bound himself to pay ·the same in forty-three monthly payments of $16, and that appellant ·should have all the rights in connection' with the contract held by the association.   It was also alleged that the note and contract executed to the association by Fuller and wife for $1200 were given in lieu of thirty- nine notes, one for $15, and the remaining. thirty-eight for $20 each, of ·date July 23, 1892, payable to F. G. W. Coleman, and said notes being ·for the purchase money of the property described in the petition, a ven-

dor's lien had been reserved to secure payment of the same. That the lien and notes were transferred by Coleman to the association. It was also alleged that appellant was the owner and holder of the notes, mortgages, vendor's lien, stock, and other papers belonging to the association, subject to certain trusts, and that appellant had the right to sue for, compromise, and collect the indebtedness of Fuller and wife. Appellant prayed that if the compromise agreement was invalid, it have judgment on the vendor's lien notes.

Fuller, in a supplemental petition, denied the execution of the compromise contract, and denied that he ever consented and agreed to a transfer of the property of the association to appellant; alleging that the association was solvent at the time of the transfer, and strictly able to carry out its contracts. He pleaded usury as to the compromise agreement, and that when he signed the same it was with the understanding that the contract was to be void unless his wife signed the same, and that she had refused to do so.

The following were agreed upon as uncontroverted facts: "That palintiff and wife executed to F. G. W. Coleman, on the 23d day of July, 1892, their thirty-nine promissory notes, one for $15, and the remaining for $20, first being payable twenty-six months after date, and the last one maturing sixty-four months after date, all of said notes bearing interest from date at the rate of 10 per cent per annum, and providing for reasonable attorney's fees in case of suit. Said notes were executed in part payment for lot 8 in block 42 of Dumas' addition to the city of Denison, and two and one-half feet off of the west side of lot 7 in same block, in Grayson County, Texas, and that an express vendor's lien was retained to secure the payment of said notes.

"That said notes and lien were transferred and assigned to the North Texas Savings and Buildings Association, and that plaintiffs agreed in writing with said association that it would be subrogated to all the rights of said Coleman. That on the 9th day of October, 1894, Fuller and wife borrowed from said association the sum of $900, and that the balance due on said vendor's lien notes was at said time the sum of $900, and that all of said sum was used for the purpose of taking up said vendor's lien notes. That at the time of borrowing said sum of money from said association, plaintiffs executed to it their certain note and obligation shown in statement of facts. That defendant North Texas Saving and Building Association had charter and by-laws shown in statement of facts.

"Said Fuller and wife also made a trust deed conveying in trust lot 8 and two and one-half feet off west side of 7 in block 42, Dumas' addition to Denison, in Grayson County, Texas, to secure said contract, in which it was stated: 'In trust, however, for the following purposes; whereas, the said first parties are indebted to said third party in the sum of $1200, as evidenced by a certain contract of even date, installments payable on or before the fourth Tuesday in each month and every month, unless default is made in payment of any one or more of said

monthly installments for six consecutive months, in which event all balance unpaid shall at once become due and payable, and said contract and this deed of trust shall at once be collected and enforced.'

"Said contract was given for part purchase money of the land described, and said association is by said contract and said deed granted, given, and subrogated to all the rights, title, and interest of said original vendor. The defendant the North Texas Savings and Building Association advanced to said Fuller the sum of $900 and no more as the consideration for said contract and trust deed, all of which was used to take up said notes.

"On the 21st day of December, 1898, Silas Fuller executed a contract which was in the form of a compromise agreement whereby he acknowledged that the balance due by him was $688, which he agreed to pay in forty-three monthly payments of $16 each, with the provision that if default should be made in the payment of three of said installments consecutively, the entire amount shall become due and payable, and said agreement provided that said lien should continue and be in force to secure the same,—shown in statement of facts. That the plaintiff made fifty monthly payments of $16 each, which, with $30 prepaid by him, makes the total paid by him amount to $830. Ten per cent is a reasonable attorney's fee for the collection of the notes.

"That said association issued six shares of stock to plaintiff, which was indorsed by him in blank, and was held and retained by said association as collateral for said loan. Said association had, among others, the by-laws as set forth in the statement of facts.

"That a majority of the stockholders authorized said association to transfer all of its assets, except certain enumerated notes, to the defendant State National Loan and Trust Company, and that the directors did make said transfer. That said transfer was not agreed by all of said stockholders. That said defendant State National Loan and Trust Company made a proposition to said association as set forth in the statement of facts, and that said proposition resulted in the final agreement transferring said stock as set forth in said statement of facts, and that said assets were transferred in pursuance to said agreement to E. E. Williams, trustee."

The jury, in answer to special issues submitted to them, found that when the association sold out to the appellant it was a solvent "going concern," was making money and would have continued to make money. They also found that matured stock was "worth one hundred cents on the dollar," and Fuller's stock was "worth fifty-five cents on the dollar," and that the contract signed by Fuller was not to be considered binding until signed by his wife. It was provided in the contract between Fuller and wife and the association that the latter would take up and extend the period of payment of the notes due Coleman, and that the amount should be due and payable in monthly installments as set out in the contract, and that all of the indebtedness should become "due on

or before one hundred months, unless default was made in payment of any one or more of the monthly installments for six consecutive months, in which event all balance unpaid should at once by such default become immediately due and payable and the contract and the deed of trust should at once be collected and foreclosed.

The following monthly payments were provided for: "(1)   Stock dues of one dollar per share and all fines and penalties that may be assessed against said L. M. Fuller on six shares of stock, number fifth series.   (2) Interest as provided in said agreement.   (3) One-third of one per cent per month of said principal sum of $1200 as a fund for redemption of said indebtedness.   Said payments shall be applied on six shares of stock, and when the same shall have reached the par value of $200 per share, then said stock shall be canceled and revert to said association and such debt shall by such cancellation be extinguished, and a release of all securities given shall, by said association, be executed and delivered to said L. M. Fuller at his expense."

In the by-laws it is provided: "The premium bid for loan is divisible into one hundred parts, the calculated life of shares, and though deducted from the loan, is charged at the rate of 1 per cent per month." In another by-law it is provided that the money in the treasury for building and loans should, on the fourth Tuesday of each month, be loaned to the member bidding the highest premium for it, which should not be less than 10 nor more than 25 per cent.   Fuller and wife under their contract were obligated to pay a premium of $300, which was 25 per cent of their loan.

Usury is usually a question of fact to be determined by the court, or, in case of a trial by jury, under proper instructions, by the jury; and as the matter of usury was not settled in the facts agreed to before the trial, and was not submitted as an issue to the jury, the judgment can not be justified unless there be evidence to justify the finding of the trial court.   Rev. Stats., art. 1331.   There was no request to submit any other issue to the jury, and the answers of the jury were responsive to the issues submitted; and in such cases, where neither the agreed facts nor the special verdict furnish the facts necessary to form a basis for the judgment, the court is presumed to have found all the facts essential to the support of the judgment, if they are shown in the statement of facts.   Devine v. Mortgage Co., 48 S. W. Rep., 585; Armstrong v. Elliott, 20 Texas Civ. App., 41.   Being authorized, therefore, to go to the statement of facts to ascertain whether the facts will support findings sufficient to support a judgment by the trial court, or of this court, we conclude that there is uncontroverted testimony to sustain such findings.

In testing the usurious nature of the contract, we omit consideration of the $1 a month stock dues required at the hands of Fuller, as well as the one-third of 1 per cent on the $1200 set apart as a sinking fund, and consider nothing except the 6 per cent interest provided for, and the

premium of $300 required at the hands of the borrowers.  There is ample authority in the decisions of many of the States of the Union to sustain the proposition that the premium should be considered in connection with the interest named in ascertaining whether a contract is usurious. It is said by Thompson, in his work on Building Associations, section 187: "If the premium charge is not authorized by the statute, and it increases the cost of loan beyond the rates of interest fixed by statute, it is usurious and void."  Numerous decisions are cited in support of the text.  There are several decisions in this State in cases in which the facts are very similar to those now before this court, and it was held that the premium bid for the loan should be considered in arriving at a conclusion as to whether such contracts are usurious.  Abbott v. Association, 86 Texas, 467; Association v. Biering, 86 Texas, 476; Association v. Griffin, 90 Texas, 480.

In the Abbott case the Supreme Court said: "The premium bid for the privilege of borrowing was a disguise for unlawful interest, and in fact was a sum to be paid for the use of money in addition to the specified rate of interest; and if the rate charged as interest amounted to more than 12 per cent per annum, the contract is usurious."  In the Biering case it was said: "The premium was a device to conceal usury.  It was so much money to be paid, in addition to the specified rate of interest, for the use of the money borrowed.  If the premium added to the interest amounted to more than 12 per cent per annum, the contract was usurious."

If there could have existed any doubt about the question as to whether the premium should be considered as interest, it is removed by the by-law above quoted, in which it provides for dividing the premium into 100 parts, making $3 a month a rate of 1 per cent a month of the premium, although it had been deducted from the loan.  Three dollars a month, a hundreth part of the premium, being added to the $6 a month for interest, gives the sum of $9 a month, or $108 a year, paid by the borrowers, which is largely in excess of 10 per cent per annum on $900, the amount of money borrowed by the Fullers from the association.  At the end of the 100 months, or eight years and four months, there would have been paid $900, or 12 per cent per annum on the amount borrowed. The same rate of interest would be maintained if the borrower should have desired to pay off his indebtedness before the maturity of the same.

It is admitted by appellant in its brief that if the contract was one "by which the loan matured in 100 months, it would be usurious, for during that period of time there would be paid $600 interest and $300 premium, or $900, which would be 1 per cent per month or 12 per cent per annum."  But it is contended that there is no absolute contract as to when the debt should become due, but that its maturity is dependent on when the shares of stock should reach the par value of $200 each. There is, however, in the contract a positive date fixed for the maturity of the debt, and that time is that fixed by the by-laws for the life of the shares,—that is, 100 months.

In the Abbott and Biering cases (23 Southwestern Reporter, 621 and 629) it was held by this court, as contended by appellant, that where no fixed period was provided for the stock to mature, and the debt was due when the stock matured, it could not be said that the combined amount of premium and the interest would render the contract usurious, but the Supreme Court granted writs of error in both cases and reversed the judgments of this court. So it would not really matter whether any time was definitely stated or not for the debt to mature, under those decisions. It was held by the Supreme Court, in those cases, that the $1 a month a share paid by the borrower would mature the shares in 200 months, and if the stock dues and the sinking fund in this case, which together amounted to $10 a month, should be applied to the shares, regardless of losses or expenses, in ten years the stock in this case would have matured, and the contract would still be usurious.

The jury found that the compromise agreement made by Silas Fuller with appellant was conditioned upon the wife signing the same, and appellant contends that such finding is not supported by the facts. Silas Fuller swore that such was the condition, and the jury saw fit to believe him, which they had the right and power to do. If this were not true, still, the contract having been made for the usurious interest due on the other contract, the last contract was also usurious. Stanley v. Westrop, 16 Texas, 201.

The contract made with the association was entered into by Fuller and wife to obtain money with which to pay off $900 which they owed to Coleman, which was evidenced by certain promissory notes secured by a vendor's lien on certain land in the city of Denison. These notes, with the lien, were transferred by the vendor to the association, and it is expressly provided in the contract with the association, and in the deed of trust executed by the Fullers, that the association is subrogated to the right and title of the original vendor in the deed. That debt, which became the property of the association, was a valid claim against Fuller and wife, and was untainted with usury. It is a well settled rule that a contract free from usury at its execution can not be rendered invalid by any subsequent usurious agreement between the same or other persons. Webb on Usury, sec. 306; Cousins v. Grey, 60 Texas, 346; Krause v. Pope, 78 Texas, 478.

In the Cousins-Grey case it was held that the doctrine applies "even when the previous legal contract is canceled and given up to the promisor and merged in the subsequent usurious agreement." Applying the above enunciated rule to the facts of this case, it follows that the contract evidenced by the notes given by Fuller and wife to Coleman was not affected by the usurious contract made by them and the association, and that the holder of those notes can collect the amount of principal and interest due thereon after giving proper credits for the payments made on the debt.

The question would then arise, what payments made by Fuller to the association should be credited on the original vendor lien notes. It is

clear that the 6 per cent interest and the pro rata of the premium paid by Fuller should be placed as a credit on the note, and in view of the provision in the contract that the one-third of 1 per cent a month on the $1200 should be used as a redemption fund, we think that should also be credited on the notes, as well as the $30 paid in advance. The premium, interest, and sinking fund amounted to $13 a month, or, for fifty months, $650, and these payments should be credited at the times of payment on the original notes.

Fuller obtained a judgment against the association in the sum of $213.80, presumably for the value of the shares of stock at the time of sale to appellant, and is not in a position to ask that the payments made on the stock be also credited on his debt. There was no proof that appellant had bought the stock merely as a means to a loan, and on the face of the contract he occupied the dual position of stockholder and borrower, and assuming the position of such stockholder, he sought to recover and did recover the value of his stock.

The value of the shares was a debt against the association for which appellant, as purchaser of the notes and liens of the association, could not be held liable. Appellant did not assume any liabilities of the association for shares or any other debts except those of certain free shareholders. The sale of the property did not work a dissolution of the corporation, and if it had, a corporation organized for a different purpose could not have assumed and performed the duties of the defunct corporation.

We conclude that the judgment, as between the association and Fuller, should be affirmed, and as between Fuller and appellant should be reversed; and the judgment of this court will be that the contract between the North Texas Savings and Building Association and Silas Fuller and wife be declared usurious, and that the sum of $30 deposited prior to the contract be credited on the debt evidenced by the vendor's lien notes, as well as the sum of $13 per month beginning with the month of September, 1894, and ending with November, 1898, and that appellant have judgment for any balance of the principal or interest remaining unpaid on said vendor's lien notes after such credits are made, interest to be calculated from October 9, 1894, at 10 per cent per annum, and that the vendor's lien held by appellant be foreclosed on the property described in the pleadings; also that appellant recover 10 per cent attorney's fees on the amount due on said notes.

*Affirmed in part.*
*Reversed and rendered in part.*

### ON MOTION FOR REHEARING.

At the time that the contract by which the notes of Silas Fuller were transferred to appellant was executed by the association, it was, according to the finding of the jury, a "going concern," making money, with

prospects of making more. Under those circumstances a meeting of the stockholders was held, and Silas Fuller, having been notified, was present at the meeting. He says that he did not vote for a transfer of the property to appellant, but was so indifferent to the whole matter that, although present, he did not know what was going on. He said: "I just got bored, and concluded I would leave." Not only did he attend the meeting and raise no protest against the transfer of the property of the association to appellant, but afterwards he signed an instrument which showed that he knew of the transfer and did not object to it. Appellant heard of no objection being urged by Silas Fuller to the transfer until after the notes had been transferred.

A stockholder will be estopped by not objecting to acts of a corporation which are not illegal, although they be ultra vires, when the rights of innocent persons have intervened. Express assent is not essential to estop the stockholder, but if the act of the corporation is not promptly and clearly condemned, the innocent dealer with the corporation will be protected. Pom. Eq. Jur., sec, 819.

In the case of Kent v. Mining Company, 78 New York, 159, it was said: "We suppose acquiescence or tacit assent to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress, after knowledge of the committal of it, whereby innocent third parties have been led to put themselves in a position from which they can not be taken without loss. It is the doctrine of equitable estoppel, which applies to members of corporate or associated bodies, as well as to persons acting in a natural capacity." In the case of Sheldon Hat Company v. Eickemeyer Hat Machine Company, 90 New York, 607, it was said: "We think, upon the facts found in this case, supplemented by supporting facts proven but not found, the stockholders of this corporation must be deemed to have assented to and ratified the settlement made by their trustees. They knew that the settlement had been made. They knew that all the property of the company had been transferred to make such settlement. They knew that the corporation, in consequences thereof, had been compelled to suspend business." It was held that the stockholders were estopped.

In this case Silas Fuller knew that all the property of the association was to be transferred to appellant. He knew that such transfer would result in the suspension of the business of the association and the destruction of his stock. Yet he was too indifferent to open his mouth to protest against such transfer. He is in no position to come into a court now and claim credit on a debt transferred to another through his acquiesence, if not active support, for unmatured stock which he knew the act of transfer would destroy. In the articles of agreement made between the two companies, which was ratified by the stockholders of the association, it distinctly appeared that Silas Fuller was not in the class of stockholders that was to be paid anything by appellant. He is estopped from claiming that he should have credit for his shares of

stock on his debt due for the purchase money on his land, if he ever had any such right.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.