---

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. JOHN G. TOD, SECRETARY OF STATE.

No. 1042.    Decided October 28, 1901.

1. **Railway Corporation—Charter—Amendment—Fees—Stock.**

Article 2439, Revised Statutes, does not require a corporation, on filing an amendment to its charter which does not increase its stock, to pay to the Secretary of State a fee of $25 on each $100,000 of capital stock authorized by its original charter. (Pp. 633-635.)

2. **Same—Statutory Construction.**

A construction of a statute in accordance with its reason and spirit may be preferred to one based on its strict letter, where not inconsistent with its terms. See example of such construction applied to the provisions of article 3439, Revised Statutes, as to the fee required to be paid by a railway corporation for filing an amendment to its charter. (P. 634.)

ORIGINAL APPLICATION for writ of mandamus against respondent as Secretary of State.

· *E. B. Perkins,* for relator.

*C. K. Bell,* Attorney-General, for respondent.

GAINES, Cʜɪᴇꜰ Jᴜsᴛɪᴄᴇ.—This is a petition by the St. Louis Southwestern Railway Company of· Texas for a writ of mandamus to compel the Secretary of State to accept a fee of $100 and to file a tendered amendment to its charter.

It is alleged in the petition in substance that the relator company was duly incorporated under the laws of Texas in the year 1891 by filing its charter in the office of the Secretary of State and paying the fees therefor; that being desirious of constructing sundry branch ' lines not authorized by its previous charter, it had prepared an amendment thereto authorizing the construction and maintenance of such lines but which did not increase the capital stock of the corporation; that it tendered the proposed amendment to the Secretary of State, together with a fee of $100, with the request that the instrument be filed as an amendment to its charter, but that the respondent refused to file the same except upon condition that it pay as a fee therefor the sum of $3825. The prayer is that the respondent be compelled to accept the fee of $100 and to file the charter.

The determination of the case depends upon the construction of so much of article 2439 of the Revised Statutes as prescribes the fees to be charged by the Secretary of State for filing charters of railroad corporations and amendments thereto. That part of the article reads as follows: "Art. 2439. The Secretary of State, besides other fees that may be prescribed by law, is authorized and required to charge for the use of the State the following fees: For each and every charter, amendment or supplement thereto, of a private corporation created for the purpose of operating or constructing a railroad, magnetic telegraph line, or street railway, or express company, authorized or required by law to be recorded in said department, a fee of one hundred dollars, to· be paid when said charter is filed; provided, that if the authorized capital stock of said corporation shall exceed one hundred thousand dollars, it shall be required to pay an additional fee of twenty-five dollars for each one hundred thousand dollars authorized capital stock, or fractional part thereof, after the first." Immediately following in the same ar-̃ ticle the statute prescribes a fixed fee for charters of corporations organized for the promotion of religion, education, agriculture and the like. Then again the article prescribes the fees to be paid for filing the charters of all other corporations than those previously mentioned. This provision is precisely the same as that quoted as to railroad companies except as to the amounts.

In construing these provisions, it is clear that a fee of $100 at·least is to be charged for the filing of every charter and of every amendment or supplement thereto. Nor is there any difficulty as to the amount to be collected upon filing of the original charter. But as to amendments to the charter, the language quoted admits of three possible construc-

tions. First, that upon the filing of an amendment, the fee must be assessed upon the entire capital stock of the corporation at the proportionate rate fixed by the statute without regard to whether the stock be increased by the amendment or not; second, in no event shall more than $100 be charged for the filing of an amendment or supplement; and third, in case the amendment provides for an increase of the capital stock of the corporation, then in addition to the fixed charge of $100, there shall be paid $25 for each additional $100,000 or fractional part of such increase in excess of $100,000. The first construction is that upon which respondent insists and is that which, upon first blush, more nearly accords with the letter of the statute; but in our opinion, it does not comport with the reason and spirit of the enactment. The law was first passed in 1883, and it was doubtless considered that it was just that those who desired to be invested with the powers and immunities of corporate existence should pay in advance a fee for the privilege. It is likewise apparent that it was also considered that as to all corporations organized for profit, except those to be chartered under chapter 14 of title 21 of the Revised Statutes, for the construction and maintenance of channels and docks, it was equitable, when the capital stock exceeded a certain amount, an additional fee in proportion to the excess should be charged. Now to give the provision the first construction would be to duplicate this additional charge every time any amendment, however trivial, should be filed. A railroad corporation within a month after its incorporation might desire to make an unimportant change in the line to be constructed, and for that purpose might file an amendment to its charter. In such a case we can see why it should be made to pay the fixed fee for filing the amendment, but we are unable to discover any good reason why the Legislature should desire to compel it to pay a second time the additional compensation for the privileges for which it had already been taxed. This, if not double taxation, would be, in spirit at least, contrary to the rule of uniformity and equality in taxation which the Constitution enjoins. It should not be held that the Legislature intended to do an unreasonable thing unless the language of the statute compels such construction.

On the other hand, it is but just and equitable, whenever a corporation organized for profit tenders an amendment which increases its capital stock, that it should pay the additional tax for such increase just as if it had filed an original charter with the same amount of capital stock as the increase. Any other rule would be liable to abuse and enable corporations of the character of those under consideration to evade the statute, first by filing a charter with a capital stock of $100,000 and then in a short time thereafter filing an amendment greatly increasing the amount. It is evident that such was not the intention of the Legislature.

The reasonable and equitable rule upon the filing of an amendment is to charge for the amendment the fixed fee as for an original charter; and in case the amendment adds to the capital stock of the corporation, to charge the same additional fee for such increment as would be

charged for an original charter with a capital stock of that amount. This is our construction of what the Legislature intended by the statute in question and it is not inconsistent with its terms. The statute does not speak of "the authorized capital stock" of an original charter nor of that of an amendment as distinguished from each other. The language is that "if the authorized capital stock of said corporation shall exceed $100,000, it shall be required to pay an additional fee," etc. This does not say that in case an amendment be filed which increases the capital stock, the "additional fee" shall be paid again upon the excess of the original stock as well as upon the increase. It is true, the law-makers mean by the "authorized capital stock" the entire stock and that the fee must be paid upon the whole. It does not follow that it was not intended that so much as was assessable upon the original stock should be paid when the original charter was filed and so much as was chargeable upon the increase should be collected after the filing of the amendment. In every case where an amendment with increase of stock is filed and the additional fee is paid upon the increase, then "the additional fee" provided in the statute upon the excess of the entire stock over $100,000 is fully paid and the requirement of the statute, as we think, is fulfilled.

We conclude that the only reasonable construction of the statute in question is that when an amendment to a charter is filed, if there be an increase of the capital stock by an amount over $100,000, then the additional fee is chargeable upon the excess of such increase over the amount named, but that if the amendment does not authorize an increase of stock, then the fixed fee of $100 only should be charged for its filing.

For the reasons given, we think the writ of mandamus should be awarded as prayed for, and it is accordingly so ordered.

*Mandamus awarded.*