CAIN v. BONNER et al.†

(Court of Civil Appeals of Texas. Texarkana. April 18, 1912. On Motion for Rehearing, June 27, 1912.)

1. USURY (§ 128*)—ESTOPPEL TO PLEAD—RELIANCE ON REPRESENTATIONS.

Where a purchaser for value of an indebtedness and a mechanic's lien contract securing it had no knowledge or notice of any facts or agreements that would render the original agreement for the loan usurious, and was induced to make the purchase by representations of the debtor that the debt was valid, his rights as a purchaser would not be affected by any illegality or usury existing.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 380–383; Dec. Dig. § 128.*]

2. USURY (§ 42*)—INSTALLMENT NOTES.

Where an agreement of debtors was to pay an existing indebtedness in monthly installments, half of each installment to be applied on the principal and the other half on the interest for two years, at which time the sum on interest was to be reduced, and the reduction added to the payment of the principal, and the installment payment of interest in the second year at the stipulated amount would have the effect of exacting more than 10 per cent. on the principal owing at that time, the contract was usurious and illegal.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 96; Dec. Dig. § 42.*]

3. USURY (§ 66*)—EFFECT ON SUBSEQUENT CONTRACTS.

Where a renewal or extension contract to pay money carried into it an agreement of the first contract for the payment of usurious interest, the renewal was also rendered illegal, and payments of interest received thereunder were properly applied in the reduction of the principal.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 139; Dec. Dig. § 66.*]

4. LIMITATION OF ACTIONS (§ 179*)—EFFECT OF RENEWAL.

Where a contract for the payment of money was renewed within the time limited by the statute before suit for the debt which it contained an agreement to pay, a petition in an action for the debt will be considered as declaring on the renewal contract in order to defeat a plea of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 667, 669; Dec. Dig. § 179.*]

5. HUSBAND AND WIFE (§ 238*) — WIFE'S CONTRACT — IMPROVEMENT OF WIFE'S ESTATE.

Where a contract for the building of a house was for the benefit of the separate estate of the wife, who signed with her husband, a judgment in an action for the debt was properly entered as personal against both husband and wife, as a married woman is authorized so to contract.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 853–855, 858, 860–863, 983; Dec. Dig. § 238.*]

6. MECHANICS' LIENS (§ 310*)—FORECLOSURE —ATTORNEY'S FEES—ALLOWANCE.

A mechanic's lien contract, transferred by the original lienor to a building and loan company to secure it on a loan made the owner of the house and her husband, cannot be foreclosed to pay attorney's fees due under the loan agreement.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 642–650; Dec. Dig. § 310.*]

7. MECHANICS' LIENS (§ 73*)—RIGHT TO—MATERIALS FURNISHED—PURCHASE OF MATERIALS FROM OWNERS.

That a builder under a contract for the completion of a building which the owners had started had an option, which he afterwards exercised, of using the material already purchased by the owners at the actual price paid for the same, will not invalidate the prior contract providing for a mechanic's lien on the premises.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

8. MECHANICS' LIENS (§ 76*)—CONTRACT FOR —ESTOPPEL.

Where a husband and wife, having the legal power to execute a valid mechanic's lien contract, executed what purported to be such an instrument, they could not claim that there was no such contract if it had thereafter been transferred to an innocent purchaser for value.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 104–107; Dec. Dig. § 76.*]

9. APPEAL AND ERROR (§ 878*)—REVIEW—NECESSITY OF APPEAL.

A cross-assignment of error will not be reviewed on appeal, where the appellees did not appeal from the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

10. APPEAL AND ERROR (§ 1175*)—DETERMINATION AND DISPOSITION—RIGHT TO RENDER.

Where there is no matter of fact or amount uncertain or issuable, the court on appeal may render the judgment which should have been rendered below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

On Motion for Rehearing.

11. USURY (§ 77*)—EFFECT OF USURY—CONTRACT OR DEBT ORIGINALLY VALID.

A contract valid in its inception is not rendered invalid by a subsequent usurious transaction in connection therewith, so that the amount of an original indebtedness may be recovered, though suit is on notes given in renewal, the consideration for which in addition to the renewal was the giving of usurious interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 153–156; Dec. Dig. § 77.*]

12. USURY (§ 78*)—EFFECT OF USURY—CONTRACT OR DEBT ORIGINALLY VALID.

But no interest may be recovered upon such indebtedness, as usury is not the excess above what might lawfully have been collected, but is rather the entire amount of interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 157; Dec. Dig. § 78.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by W. G. Cain against Charles T. Bonner and another. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

The appellees are husband and wife, and were at the time of the transactions herein, and the property involved is their homestead, and was prior to the inception of the transactions, and is the separate property

of the wife. At the time of the application for the loan in suit the appellees were constructing on the property a residence, which had been in the course of construction for about a year. The workmen were being paid for the work by the day. On July 7, 1897, the wife, joined by the husband, executed a mechanic's lien contract to J. H. Bothwell, a mechanic and builder, on the property, to secure to him the recited contract price of $3,000 for the material to be furnished and labor to be done by him in finishing and completing the house. The builder obligated himself to furnish and supply all material, and do all the work for the stipulated sum. The contract lien was properly acknowledged, and placed of record in the clerk's office. On August 10, 1897, the builder indorsed a credit of $500 on the back of the contract as paid by appellees. The house was finished and completed according to the contract, and received by appellees. On July 6, 1897, the appellees made application to the Southern Building & Loan Association to purchase the indebtedness and lien of Bothwell, and to extend the time of payment, and to carry same. The application was accepted after Mrs. Bonner complied with the conditions of purchasing 100 shares of the stock of the association, and agreeing to pay therefor. On July 28, 1897, the appellees executed to the said Loan Association their note for $2,500 due nine years after date, with 10 per cent. interest from date, payable monthly. On August 11, 1897,. Bothwell transferred in writing the mechanic's lien to the Loan Association. The assignment was registered in the clerk's office. On May 2, 1898, the said Loan Association transferred the loan and lien to the National Loan & Investment Company of Michigan. On January 16, 1900, the said National Loan & Investment Company transferred the loan and lien to appellant Cain, he paying therefor $2,319.90. On January 16, 1900, appellees executed an obligation to appellant for that amount, representing such amount as due and owing. On January 16, 1903, the appellees executed a renewal or extension note reciting that $4,013.38 was owing and to be paid. The details of the execution of the two notes are set out in the court's findings of fact No. 5, and here adopted as the facts. Appellant Cain was an innocent purchaser for value of the indebtedness and lien. Appellees have paid on the original indebtedness to appellant the total of $1,580.36. Appellees also owe appellant for revenue stamps, exchange, and insurance premium $32.27. Appellant sued on the renewal debt and to foreclose the mechanic's lien. Appellees answered by exceptions, denial, and plea of usury, and praying application of payments in liquidation of principal, and also filed cross-action for penalty of usury. The trial was to the court, and judgment for appellees.

In order to make full findings, if material, the court's findings of fact Nos. 2, 3, and 4 in the record are here adopted.

Ben B. Cain, of Dallas, and Cone Johnson, of Tyler, for appellant. Lasseter & McIlwaine, of Tyler, for appellees.

LEVY, J. (after stating the facts as above). The appellant by his assignments challenges the conclusions made by the court that the obligation of indebtedness sued on is tainted by usury, and that the mechanic's lien contract is in part invalid. The controversy between the parties is upon these two points. As the ground for holding the mechanic's lien contract invalid in part is not connected with the defense of usury,. the two questions can be considered separately. The court's findings are to the effect (1) that the original agreement of loan to appellees by the loan company was a scheme to cover up an usurious rate of interest, and that the recitations in the documents turned over to appellant Cain at the time when he purchased the debt from the loan company were sufficient to carry notice to Cain that the original agreement of loan was usurious; and (2) that the contract subsequently made by appellees with appellant Cain in 1900 to repay the debt so purchased by him from the loan company stipulated for usurious interest, and the subsequent renewal or extension of such contract in 1903 was affected and tainted by the usurious stipulations of the one of 1900.

[1] Appellant Cain, it is admitted, purchased for value from the loan company the original indebtedness, less certain credits upon the principal, and the mechanic's lien contract. The only notice or knowledge that Cain had of any facts rendering the original agreement for the loan by the loan company usurious was, as found by the court, such as appeared from recitations on the face of the written documents. The recitations in these written documents evidence on their face, we think, a contract only for a legal rate of interest. Thus it would appear as a conclusive fact in the record that Cain had no notice or knowledge of any facts or agreements that would render the original . agreement for the loan usurious. This fact appearing, and the further fact admitted by the record that the appellees, the debtors, induced the appellant, by representations that the debt was valid, to purchase it from the loan company, the appellant Cain's rights as a purchaser of the debt would not be affected by illegality or usury at the hands of the loan company, for appellees would be estopped in the circumstances to allege against Cain that the obligation purchased by him was usurious. Real Estate Co. v. Bahn, 27 S. W. 1047. The appellees being in the circumstances estopped from asserting that the obligation was usurious at the time of the purchase by ap-

pellant, the appellant would not be chargeable with any of the payments made by appellees to the loan company, or either of them, while the obligation was in their hands, and of which he had no notice. In this view, therefore, it would be an immaterial finding or conclusion to any issue between the appellant and the appellees that the original agreement of loan between the appellees and the loan company was usurious. In measuring the rights of the parties to this suit as to the plea of usury from and by the contracts made between them as to repayment of the debt purchased by appellant from the loan company and represented to be owing by appellees, the findings and conclusion of the court in respect to such repayment contracts of 1900 and 1903 are fully warranted by the record, and should, we think, be sustained. The court made the finding, and it is admitted by the record, that on January 16, 1900, the loan company transferred to appellant the original loan, and that appellant paid the loan company the sum of $2,319.90 therefor. This amount is less than the amount originally borrowed by appellees, and is the amount appellees represented to appellant was correct and owing.

[2] On the same day of the above transfer of the debt the appellees executed to appellant an obligation in writing, contracting therein to pay appellant the sum of $2,319.90 in installments of $35.80 per month, to begin in January, 1900, with the express stipulation that the $35.80 installment to be paid per month should be apportioned and applied per month as follows: $17.90 on the principal of the claim, and $17.90 on the interest of the claim, with the proviso that the failure to pay as many as 12 installments should at the option of the holder mature the entire claim. It was agreed that "at the end of two years' payments the above sum on interest will be reduced and said reduction added to payment on the principal." Clearly, by the terms of the contract, the debtor was obligated for the first two years before the interest sum would be adjusted by reduction to pay interest at the rate of $17.90 per month on the principal of $2,319.90. Calculating interest at 10 per cent. on the original principal for the first year, the installment of $17.90 interest per month would not make the contract usurious. But by its terms the debtors were obligated to pay the second year the same amount of interest as the first year, which was to require the appellees to pay interest on part of the principal which would already have been paid by the installment payments on the principal in the previous year. Thus the installment payment of interest in the second year at the stipulated amount would have the effect of exacting more than 10 per cent. on the principal owing in the second year. The contract is, we think, usurious and illegal. Invest-

ment Co. v. Grymes, 94 Tex. 609, 63 S. W. 860, 64 S. W. 778; Id., 50 S. W. 467.

[3] This contract being usurious, then it must further be held that the renewal or extension contract of January 16, 1903, was illegal, as involved in the conclusions of the court, because the record admits the fact that this renewal or extension contract intentionally, and by agreement of the parties carried into it the usurious interest of the one of January 16, 1900. The renewal or extension contract being tainted with usury, then the court was correct and fully warranted in applying the payments for interest received in reduction of the principal of the debt purchased by appellant from the loan company, as prayed for by the pleadings of appellees. The amount appropriated by appellant to the satisfaction of the interest charged by him on the renewal or extension contract was found by the court to be $1,412.86, and this finding is fully supported by the record. There is a further finding that $167.50 was paid on the contract of 1900, which is fully supported by the evidence. Applying the aggregate amount as payments on the principal of $2,319.90, then there remains, as admitted by the record, unpaid by appellees on the original loan the sum of $739.54. Add to this sum the $6.55 for revenue stamps and exchange, and $25.72 for fire insurance premium, and there exists the total of $771.81, together with the stipulated 10 per cent. on such sum for attorney's fees, that appellant is entitled to have judgment for.

[4] In this connection we would say that appellant's petition must be construed as declaring on the renewal or extension contract of 1903; otherwise, it was subject to the appellees' plea of limitation. Howard v. Windom, 86 Tex. 565, 26 S. W. 483.

[5] The mechanic's lien was an incident of the debt sued on. Of the sum here found payable appellant is entitled to have personal judgment against both appellees for the sum of $739.54, with 10 per cent. attorney's fees, for it appears that the debt was contracted for the benefit and improvement of the separate estate of Mrs. Bonner, and a married woman is authorized to make such contract as she did here.

[6] The mechanic's lien, however, cannot be foreclosed to pay the attorney's fees. The balance of the above amount found due is a personal liability against C. T. Bonner alone, but the mechanic's lien cannot be foreclosed to pay it.

[7] Next for consideration is the conclusion of the court that the mechanic's lien contract was invalid in part. The court concluded as a matter of law that the mechanic's lien contract was void to the extent of $1,210 worth of material which was on the premises bought and owing for by appellees to divers persons at the time of the creation of the lien, for the reason that the appellees did not have the power under the Constitu-

tion to create a lien upon their homestead for material already furnished, and for which they then owed at the time of the creation of the lien. The evidence on which the conclusion is founded is without conflict, and shows that the appellees undertook to build a house on the homestead on their own account, and had the same partly erected, but, before the same was completed, they concluded to have the remainder of the work done by contract, and the appellees, husband and wife, together executed the mechanic's lien contract in suit on the property to secure to the contractor the contract price for the material to be furnished and labor to be done by him in the completion of the house. The mechanic's lien contract contained a clause reciting that "the said first parties [appellees] hereby agree * * * that they will give him [Bothwell, the builder] the benefit of all contracts for material now on hand, and sell him all material already bought for said purpose at the actual price paid for same, to wit, the plumbing material and plaster, which is now on the ground and premises." Prior to the time appellees executed the mechanic's lien contract the husband had purchased certain material to be used in the construction of the house, and most of it was on the premises. The material was not paid for by the husband, and he was owing for it to divers persons. This material was subsequently used by the builder in the completion of the home, and was paid for out of the money received by Bothwell, the builder, from the loan company for the transfer and assignment to it of the mechanic's lien contract. The appellees, it appears, were not indebted to the builder for the material on hand. Properly construing the mechanic's lien contract, it did not bind the builder to take over the material of appellees on the premises, or to buy the material already on the premises, but left it to the option of the contractor to take or refuse to take same. He was free to buy the material elsewhere and from others if he desired. Such being the situation of the parties, it does not appear that appellees had executed a mechanic's lien to a contractor obligated to pay them back for material already on hand, nor are the facts to be likened to a lien given on a homestead to a materialman who had furnished the material on hand under· a contract of purchase entered into before the execution of the lien contract. On the contrary, the contract shows it is made with the builder of the house, he to furnish material and labor to finish the improvement, for a fixed sum, the builder obligating himself to supply all material and labor for that purpose. It further appears that the contract is entered into and the lien executed in favor of the builder before any of the material is supplied or furnished by the builder. The builder, according to the facts, afterwards took the material and paid for it. He merely exercised an option to do this. But up to the time of the contract and execution of the lien the builder had no relation to the building or to the parties from whom the material had been purchased. Where it is made to appear, as here, that the builder furnishes the material and pays for it, and it goes into the building, and all this is done after the execution of the contract lien by the husband and wife, it would seem to be an immaterial inquiry to the validity of the contract lien, from whom he had purchased and paid for the material so used. If under such preceding facts there would appear a valid mechanic's lien on the homestead, then we are unable to see why the mere fact that the builder at a time subsequent to the execution of the mechanic's lien contract, and at his option and from free choice, took over a contract for material which the appellees had already entered into, would render invalid the contract and lien as against appellant. We think the lien is not invalid as to appellant, and so hold.

[8] A further conclusion of the court upon the validity of the lien is made dependent upon another state of facts, and should be sustained. Such conclusion ·was that the husband and wife having the power under the law to execute a mechanic's lien for material to be furnished and labor to be performed on the home, and having executed what purported to be a valid mechanic's lien, and, appellant being an innocent purchaser thereof for value, the appellees cannot now claim as against appellant that there was no contract in fact with the contractor. While the latter conclusion is not complained of, the approval of the court's conclusion is an answer to appellees' contention in respect to such fact. Further the first cross-assignment is overruled.

[9] The second cannot be considered, because appellees did not appeal from such judgment; and, if they had, we do not think a recovery could be allowed in view of their other pleading electing to ask application of the payments in liquidation of the principal

[10] There being no matter of fact or amount uncertain or issuable, the power of this court to here render the judgment the court below should have rendered exists. The judgment is reversed and here rendered in favor of appellant against Mrs. Mary D. Bonner and C. T. Bonner for $739.54 and 10 per cent. attorney's fees on such sum, and against C. T. Bonner alone for $32.27 and 10 per cent. attorney's fees on such sum, and with a foreclosure of the mechanic's lien on the property described in the mechanic's lien contract against Mrs. Mary D. Bonner and C. T. Bonner and order of sale of same to satisfy only the sum of $739.54. The costs of the appeal and of the district court will be taxed against appellee C. T. Bonner.

### On Motion for Rehearing.

[11] Appellant insists that, as the original debt in his hands was freed from taint

of usury by the doctrine of estoppel, it was error to not allow interest on the same, notwithstanding the subsequent agreements of 1900 and 1903 are usurious. It is correct that a contract valid in its inception is not rendered invalid by subsequent usurious transactions in connection therewith, and action may be brought on the original valid obligation. Cousins v. Grey, 60 Tex. 349; Harn v. Building Ass'n, 95 Tex. 79, 65 S. W. 176; Krause v. Pope, 78 Tex. 478, 14 S. W. 616; Loan & Trust Co. v. Fuller, 26 Tex. Civ. App. 318, 63 S. W. 555. But here the action could not be said to be on the original obligation as such, so as to recover the principal and lawful contract interest. The amended petition set up, in order to pass over the plea of limitation against the original note and contract, that on January 16, 1900, the very day of acquisition by appellant of the original contract, there was entered into a renewal or extension note, and a renewal or extension again in 1903, and again by letter in 1907. Having set up and relied on the renewal notes in order to recover, the action must be said to be on such renewal notes, and not on the original note or original obligation as such. Part of the consideration in the extension or renewal notes was shown to be usurious, and part was the renewal of the original debt.

[12] As the action was on the renewal notes, and such extensions or renewals of the principal sum at an illegal rate of interest being usurious agreements, then no interest from the date of such agreement was recoverable, though the principal indebtedness, being valid, was recoverable; for usury under the statute is not the excess above what might lawfully have been collected, but the whole amount of interest. Smith v. Chilton, 90 Tex. 447, 39 S. W. 287. There was no interest due nor claimed, according to the record, before the date of the usurious extension of 1900.

The motion for rehearing is overruled.