## GREAT SOUTHERN LIFE INS. CO. v. WILLIAMS et al.

### No. 4651.

Court of Civil Appeals of Texas. Amarillo.

Feb. 22, 1937.

Rehearing Denied April 26, 1937.

Frank Tatum, of Dalhart, C. C. Small, of Amarillo, and Fred R. Switzer and Vinson, Elkins, Weems & Francis, all of Houston, for appellant.

Otis Trulove, of Amarillo, for appellees.

HALL, Chief Justice.

Joseph L. Williams and wife, joined by J. J. Dimmitt, Jr., sued the Great Southern Life Insurance Company, Phillips Petroleum Company, and Margaret E. Williams, The defendant Margaret E. Williams is the daughter of Joseph L. Williams and wife, and adopted the allegations set out in the plaintiffs' petition as against the appellant, and further alleged that she was the holder of notes secured by a lien upon the property, which lien is subsequent to the one held by the Great Southern Life Insurance Company. She prayed that only in the event the Great Southern Life Insurance Company is decreed a foreclosure, that her lien be foreclosed.

The Phillips Petroleum Company answered by general denial.

The plaintiffs and the Great Southern Life Insurance Company both filed amended and supplemental pleadings.

Williams and wife and Dimmitt sought to set off certain sums against a $40,000 note, executed by them on July 2, 1928, made payable to the Great Southern Life Insurance Company, and secured by deed of trust lien of that date upon approximately 6,858.2

acres of land, located in Hutchinson and Moore counties, and owned, three-fourths by Williams and wife, and one-fourth by Dimmitt. The said $40,000 note and deed of trust were given in lieu of a balance of $30,000 due on a $35,000 note, executed by Williams and wife to the Great Southern Life Insurance Company, dated January 20, 1925, upon the same land. By the $40,000 note and deed of trust $10,000 additional was loaned the appellees and the balance of $30,000 unpaid on the $35,000 note was extended approximately three and one-half years. The $35,000 note and the $40,000 note bore interest at the rate of 7 per cent. per annum, payable annually.

Appellees, Williams and wife and Dimmitt, sought to set off against the $40,000 note all interest they had paid on the $35,000 note, amounting to $8,439, and the interest paid on the $40,000 note amounting to $15,171.52, and in addition thereto they sought to set off the sum of $3,500, being the aggregate of six notes executed by Williams and wife to H. B. Dewey, which notes appellees allege were executed by Williams and wife to Dewey, who claimed them as his compensation for negotiating for appellees from the Great Southern Life Insurance Company the $35,000 loan, evidenced by the note and deed of trust dated January 20, 1925. Said six notes are as follows: Note No. 1, $250, due February 20, 1925; note No. 2, $250, due February 20, 1925; note No. 3, $750, due January 20, 1926; note No. 4, $750, due January 20, 1926; note No. 5, $750, due January 20, 1927; note No. 6, $750, due January 20, 1927—each of said notes bearing interest from maturity until paid at the rate of 10 per cent. per annum, and payable to H. B. Dewey, or order, at Amarillo, Tex. They were secured by deed of trust upon the same 6,858.2 acres of land, said trust deed being dated January 20, 1925, and acknowledged February 7, 1925.

Williams and wife also sought to set off $650, which appellant claims appellee Williams agreed to pay to H. B. Dewey for negotiating an extension of the balance of $30,000 on the $35,000 note, and increasing the loan from $30,000 to $40,000.

Dimmitt and Williams and wife as grounds for setting off the face value of said notes in the sum of $3,500 and the $650, which they agreed to pay to Dewey, alleged that in said transaction Dewey was agent of the Great Southern Life Insurance Company, and because of the relation of Dewey to the Great Southern Life Insurance Com-

pany it was chargeable with the amount of commission notes aggregating $3,500 and the commission of $650, and that said sums when added to the interest provided for in said notes made the amount paid by Williams and wife and Dimmit for the use and detention of money more than 10 per cent. per annum, which fact under the law gave them a right to offset said sums against the principal of the $40,000 note.

Appellant contends that during 1919 Dewey was a partner with Mr. Vittrup, and they were engaged as real estate loan brokers, maintaining offices in Amarillo, Tex., and thereafter until the date of the trial Mr. Dewey maintained an office in Amarillo, and was engaged in the "real estate loans" business. In 1919 he and Vittrup and thereafter Dewey until 1924 placed most of their loans with the F. B. Collins Investment Company and the Commerce Farm Credit Company, and the Southwestern Life Insurance Company. From 1919 until 1931 or 1932, Dewey had no established connection of any kind with the defendant. After 1931 or 1932 he did some inspection of lands and negotiated terms of leases upon lands owned by the appellant, for which he was paid in each case a specific fee and expenses. No part of the commission notes aggregating $3,500 or the cash commission of $650 was ever received by the Great Southern Life Insurance Company, or any of its officers.

The appellant company's defense against the appellees' claim of agency is that Dewey was not the agent of appellant in either of these transactions. That he was never authorized on behalf of appellant to make any loans of its money, and the authority to determine whether or not the loans in question should be made was vested in the loan committee of the appellant, which committee determined whether or not a loan should be made, and the terms upon which it should be made, and that since the appellees had employed Dewey to negotiate said loans with the appellant, Dewey was in fact the agent of appellees in both transactions.

The case was tried to the court without a jury, resulting in a judgment that the appellees were entitled to such deductions, except $2,109.75, being one-fourth of item of $8,439, because of Dimmitt's assumption, and determined that the amount unpaid on said $40,000 note on November 21, 1935, the date of the judgment, was the sum of $8,049.23, and further decreed that the said deed of trust lien was valid and subsisting

to secure the balance of $8,049.23 owing on said note, and canceled said lien in all other respects.

The court filed numerous findings of fact, many of which are challenged and excepted to, and these will be set out as the various propositions attacking them are discussed.

The first proposition is: "The trial court erred in finding as a fact: I further find that said commission of $3500.00 charged by said Dewey on said $35,000.00 was evidenced by six notes executed by said J. L. Williams in favor of said Dewey; two notes being in the principal sum of $250.00 each, falling due February 20, 1925, two in the principal sum of $750.00 each, falling due January 20, 1926, and two in the principal sum of $750.00 each, falling due January 20, 1927, with interest at the rate of 10% per annum from maturity; that said commission notes were secured by a deed of trust executed by said Williams in favor of said Dewey, covering the same lands described in the deed of trust executed by Williams and wife, in favor of said Great Southern Life Insurance Company, to secure said $35,000.00 loan; that said commission notes and the deed of trust given to secure same, were executed at the same time of the execution of said $35,000.00 note and deed of trust securing same."

Although not stated in the brief, the court further found in this connection that said commission notes were paid off by Williams within two years after the date of their execution.

The contention is that there is no evidence to support the finding; that all the evidence on the question comes from Williams.

This is followed by the second proposition, which is in substance that the court erred in rendering judgment against the company and in favor of Williams and Dimmitt upon the theory that the appellees had the right to set off against the appellant's note for $35,000, dated January 20, 1925, and renewed, and extended by a $40,000 note, dated the 2d day of July, 1928, the sum of $3,500, being the aggregate of the six notes described in the court's finding, because all the evidence on the question is the testimony of the appellee Williams, who testified that the six notes secured by the deed of trust, acknowledged February 7, 1925, were given by him and his wife to Dewey in lieu of other notes dated January 20, 1925, originally given to Dewey as compensation for his services in negotiating said loan, and that said first notes were different in their denomination and there might have been some difference in the maturity thereof from the six notes above described.

There was no objection during the trial to any testimony relating to the six notes upon the ground of variance. The exception was to this part of the finding: "That said commission notes and the deed of trust given to secure the same were executed at the same time of the execution of the $35,000.00 note and the deed of trust securing the same," because Williams' testimony showed that the deed of trust and notes sued on were given in lieu of the first notes and deed of trust dated January 20, 1927.

Prior to the finding above quoted, the court also found: "That Williams, upon making application for said first loan of $35,000.00, was informed by said H. B. Dewey that he would have to be paid a commission of 10% on the principal of said loan, or the sum of $3,500.00, and, in order to procure said loan, plaintiffs were required to pay said Dewey said sum of $3,500.00; and the court finds that the payment of said commission, and the requirement thereof by said Dewey, was a part of said loan transaction."

The deed of trust from Williams and wife upon the lands described to secure the $35,000 note, made payable to the Life Insurance Company, was dated January 20, 1925, and acknowledged by the grantors on January 29, 1925.

Another deed of trust was introduced, covering the same lands, executed on January 20, 1925, by Williams and wife to Paul A. Speer, trustee, for the use of H. B. Dewey, and acknowledged February 7, 1925, to secure the payment of the six notes described in the court's findings.

Counsel for appellant examined Williams with reference to the execution of the $3,500 note, and as shown by the statement of facts Williams testified as follows:

"Q. Now, you allege in your petition here that you paid Mr. Dewey a commission of $3500.00 which was represented by six notes; two notes for $250.00 each falling due February 20th, 1925, and two other notes for $750.00 each, falling due January 20th, 1926, and two other notes for $750.00 each, falling due January 20th, 1927. Now, when were those notes signed, and the deed of trust securing those six notes you made to Mr. Dewey? A. I signed up two sets of the papers. The first one that

Mr. Dewey come back and had changed, and he surrendered the first notes, and had others made in their stead, for what reason I don't know, but the first notes—there was no difference in the amount, but there was a difference in the denomination of the notes.

"Q. Now you are speaking of the Dewey notes and the deed of trust? A. Yes sir, I signed up two sets of those, and he took up one and asked for another.

"Q. Well, just get back— A. But there was no difference; there might have been some difference in the date and the making —there might have been some difference in the dates of maturity, but for some reason or other, they didn't suit him, and he made up different notes and I executed them and took the others up that I had first given him.

"Q. Now, I will ask you, Mr. Williams, the first notes that you signed payable to Dewey and the deed of trust to secure them, when were those notes executed, in reference to the time of the execution of the $35,000.00 deed of trust and notes to the Great Southern? A. I think they were dated on the same date.

"Q. Signed at the same time, the same occasion as you signed the others? A. Yes, I think so.

"Q. For some reason, you know not why, he made a change in his notes and came back and had you to execute new notes? A. Yes, I don't think the first were recorded at all; he just surrendered them to me and got me to make other notes.

"Q. But, in signing up the first notes, it was all the same transaction with the time you signed up the $35,000.00 note to the Great Southern Life Insurance Company? A. Yes, sir."

"Q. So, after the transaction was closed, your agreement with Dewey when you went in there to see him at the time of the signing of the application, was that you were going to pay him the sum of $2500.00, to be evidenced by a series of notes, and that was to be secured by a second lien upon his property? A. Yes, sir, that was the understanding.

"Q. And after the loan was consummated and you received the money you were not able to give him a second lien, were you? A. No, sir.

"Q. Had you paid him anything at that time? A. No, sir, not that I recall."

So it appears that Williams and wife executed two sets of notes payable to H. B. Dewey representing his commission. The first papers, according to Williams' testimony, were for some reason unsatisfactory to Dewey, and Williams and wife later executed the notes and lien which Dewey accepted. In State National Loan & Trust Company v. Fuller, 26 Tex.Civ.App. 318, 63 S.W. 552, 555 the court said: "It is a well-settled rule that a contract free from usury at its execution cannot be rendered invalid by any subsequent usurious agreement between the same or other persons. Webb, Usury, § 306. Cousins v. Grey, 60 Tex. 346; Krause v. Pope, 78 Tex. 478, 14 S.W. 616. In the Cousins-Grey Case it was held that the doctrine applies 'even when the previous legal contract is canceled, and given up to the promisor, and merged in the subsequent usurious agreement.'" Cain v. Bonner (Tex.Civ.App.) 149 S.W. 702, 706, announces the rule in this language: "It is correct that a contract valid in its inception is not rendered invalid by subsequent usurious transactions in connection therewith, and action may be brought on the original valid obligation." See, also, 3 A.L.R. pp. 877, 879, 881, and 882.

In his testimony concerning the notes as shown above, Williams said, "There might have been some difference in the dates of the maturity," meaning that the first series of notes may have matured at a later or earlier date. The burden of proof in usury cases is correctly stated in the dissenting opinion of Ferguson v. Martin (Tex.Civ.App.) 70 S.W.(2d) 804, 807, as follows: "The burden of proving that a transaction is infected with usury rests upon him who attacks it, and that fact must be established by at least clear and convincing evidence." Schoolcraft v. Temple Trust Company (Tex.Civ.App.) 64 S.W. (2d) 1052; Marsh v. Tiller (Tex.Civ.App.) 293 S.W. 223; Rushing v. Citizens' National Bank (Tex.Civ.App.) 162 S.W. 460.

Since it was not shown that the original notes executed by Williams and wife to Dewey were tainted with usury, appellee has failed to discharge the burden resting upon him and we must assume that the original notes were legal. Under the rules of law quoted above, if it be admitted that the second set of notes constituted usury, the proof is insufficient to entitle Williams to recovery.

Another material issue which was sharply contested is the sufficiency of the evidence

to sustain the contention of appellee that Dewey was an agent with express and implied authority to represent the appellant in making the loan.

In view of another trial it is not proper for us to. discuss this point or to express an opinion as to the sufficiency of the evidence.

For the reasons stated in discussing the first proposition, the judgment is reversed and the cause remanded.