## Walter Bradford v. The State.

No. 5868.   Decided November 3, 1920.

**1.—Theft of Hog—Continuance—Want of Diligence.**

Where the application for continuance for the absence of witnesses showed a want of diligence, the same was correctly overruled.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of theft of hogs, the alleged stolen property was found shortly after the theft in possession of defendant, and no sufficient explanation given thereof by him, and the other circumstantial evidence of his guilt in the case sustained the conviction under a proper charge of the court, there was no reversible error.

**3.—Same—Question of Fact—Practice on Appeal.**

The sufficiency of circumstantial evidence in the first instance is a question for the jury, and the duty of this court in its reviewing capacity is to determine whether there be any evidence in the record upon which the verdict might have foundation, and after a thorough consideration on a motion for rehearing, this court adheres to its opinion that the evidence in the instant case is sufficient to sustain the conviction. Distinguishing Watson v. State, 82 S. W. Rep., 514; Noble v. State, 192 S. W. Rep., 1074.

Appeal from the District Court of Washington. Tried below before the Honorable R. J. Alexander.

Appeal from a conviction of theft of hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. J. McCain* and *Martin, Teague & Mathis,* for appellant.—On question of continuance: Preston v. State, 4 Texas Crim. App., 193; Vickery v. State, 7 id., 402.

On question of insufficiency of the evidence: Williams v. State, 208 S. W. Rep., 522; Strickland v. State, 197 id., 1104; Butler v. State, 203 id., 597; Kellum v. State, 200 id., 844; Spiller v. State, 135 id., 549, and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Washington County, of the theft of certain hogs, and his punishment fixed at two years confinement in the penitentiary.

When the case was called, appellant asked for a continuance, because of the absence of the witnesses Black and Patterson. The indictment was returned in March, 1919. It does not appear from the record that any process was taken out for the witness Black until March, 1920, and the subpoena then issued was not served. This

will not be sufficient diligence. It is not shown that any process had ever been issued for the witness Patterson. Nothing appears in the record as showing any effort to obtain the testimony of this witness, except that it is stated in the application for continuance, that said witness was instructed by the court at the September, 1919, term, to be in attendance upon this trial at the March term, 1920. A witness may be present without process, and receive an instruction from the court to return on a day certain, but unless he be under process, this would not be a showing of diligence. The continuance was properly refused.

It is strenuously urged that the verdict was without support in the testimony. Jane Thomas lost six hogs on or about December 3, 1918. Said hogs consisted of a sow, and five yearling shoats, which had been raised by her, and ranged near her home until they disappeared, as stated. Said hogs were marked with a smooth crop and split and underbit in the right ear, and an underbit in the left ear. When they were lost they were in good condition for killing. Several days after the disappearance of said hogs, according to the constable, who went to appellant's house looking for the meat, he found a big box of meat, containing about forty-six pieces, in a house on appellant's premises. The officer found hog-hair in front of the house, where it appeared that butchering had been done, and appellant said that was where he butchered the shoats. Not satisfied with the quantity of hair at said place, the officer went back the next day, searched further, and behind appellant's house, and in a corner of an ell thereto, he found a lot of red and black hog-hair. He asked appellant why he butchered there, and the reply was that the wind was high. Jane Thomas positively identified the meat found on appellant's premises by the constable, as that of her hogs, her identification appearing to be based on various matters, but principally because of the hair that had not been well cleaned from the meat, and each piece of which she identified as hers. She also said that on the old sow's middling, the tit was there. A further circumstance was that her hogs consisted of five females and one male, all being black and red spotted. She seems to have taken the meat from appellant's house, as hers, without any objection or resistance from him. The uncontradicted testimony shows that the meat came from one large hog and other smaller ones.

When the officer went to the house of appellant, searching for the hogs, or meat, a few days after the hogs of Jane Thomas were missed. and found the box of meat, he was unable to find any heads or ears of any of the butchered hogs. Appellant, when inquiry was made about this fact, said they ate them first. Appellant was shown to have about the same number of hogs after he had butchered, as before. His claim was that he had lost a couple of sows a few years before this occurrence, and he had found a bunch a wild hogs, and butchered those whose meat was found in his house. It was in testimony that

neither of his runaway sows were partly or wholly sandy or red, but that they were black, or black and white. The hair found in his yard, and the ell of his house, and that on the butchered meat, was black and sandy. The neighbors who testified in the case seemed to be well acquainted with the hogs of Jane Thomas, and stated that they had not been seen since the time she said they were missing. Appellant lived about three-fourths of a mile from Jane Thomas. He did not take the stand, nor did his son, or any other witness in his behalf. The court charged the jury fully upon circumstantial evidence, and the charge seems to have been so acceptable to appellant that no objection or exception was taken thereto.

We have carefully considered this evidence, and are unable to say that the jury were without any testimony upon which they arrived at the conclusion of appellant's guilt. The witnesses were before the trial court and the jury, who are made the persons to pass upon their credibility and the weight of their testimony—the jury primarily, and the trial court in passing upon a motion for new trial—and both of these have passed upon the weight and sufficiency of the testimony unfavorably to appellant. While the testimony of Jane Thomas, identifying the meat by the hair thereon, might not be sufficient in itself, there were many other circumstances in evidence reasonably calculated to lead the jury to believe that appellant was the party who took the hogs.

The judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

November 3, 1920.

LATTIMORE, Judge.—The sufficiency of the evidence is the only question raised by appellant in his motion for a rehearing. The evidence was circumstantial. Its sufficiency, in the first instance, is a question for the jury, and the duty of this Court, in its reviewing capacity, is to determine whether there be any evidence in the record upon which the verdict might have foundation.

Appellant, a negro preacher, lived near Jane Thomas, the owner of the alleged stolen hogs. We would conclude from the record, that the hogs of the various members of that community were well known to the neighbors. The alleged stolen hogs—a sow and five yearling shoats, had been raised at the home of Jane Thomas. They disappeared. No sort of reason for such disappearance seems at hand except that about the same time there appeared in the appellant's meat box the hams, shoulders, and middlings of one large hog and five smaller ones. The hogs of Jane Thomas were all earmarked, and when the investigators asked appellant to produce the ears of the hogs slaughtered by him, his explanation of his failure to do so was

that they had eaten the ears first.  On Monday after Jane Thomas'
hogs disappeared, appellant told George Lewis, a neighbor, that he,
appellant, was being talked of in that neighborhood as having taken
said hogs.  Just why he should have told Lewis this is not shown.
Lewis said that he had not heard it, but it is well known that the guilty
conscience needs no accuser, and finds a pursuer in every shadow; an
officer in every approaching stranger.

Appellant's only explanation as to the meat found in his house,
made at the time, was that some two years before that time, he had
lost two sows, and that he found one of them with a bunch of shoats,
and had driven them home and slaughtered them.  As said sows
were shown by the neighbors to have been of a totally different color
from the color of the hog-hair found at the place where appellant
said he slaughtered said hogs.  This place was at appellant's home.
Large quantities of hog hair having the same general characteristics
as the hair on the lost hogs of Jane Thomas, was found in the yard
of appellant, most of it being in the corner of the L on appellant's
dwelling.  When asked why he should kill hogs in such a private
place, he said the wind was blowing hard.  The fact of appellant's
bringing home unmarked wild hogs, and there slaughtering them;
the early consumption of their ears, and the color, age, and descrip-
tion of said hogs, was certainly most material evidence.

Appellant had a family, not one of whom was placed on the wit-
ness stand to explain any of these strong circumstances against him.
He, himself, did not testify.  The old negro woman swore that the
meat found in appellant's place was from her hogs.  She said she
could identify it by the hair, and in other ways.  Her ability to make
such identification may be questioned, but the circumstances detailed
and offered in evidence seem to us to justify the jury in concluding
to a reasonable and moral certainty that appellant, and no other
person, took said hogs.  Appellant cites authorities.  We have ex-
amined all of them: Watson v. State, 82 S. W. Rep., 514, and Noble
v. State, 192 S. W. Rep., 1074, are cases of hog theft.  In the Watson
case the accused introduced cogent evidence, casting doubt on the
identity of the meat.  The only evidence of the guilt of the accused
in that case was the owner's attempt to identify the meat.  The man
who sold the alleged stolen hog to said owner, testified that he thought
the hog so sold by him was not as large as the one from which the
meat found in the appellant's possession came.  In the Noble case,
it appeared to be established that the alleged stolen hog was dead
before the accused had any connection therewith, this Court indicat-
ing in its opinion that in such case a charge of hog theft was not
applicable where the theft was only of pork.  The great preponder-
ance of the evidence in that case also showed an innocent connection
of accused with the hog.  The Williams case, 84 Texas Crim. Rep.,
461, 208 S. W. Rep., 522, was a cotton-seed theft, almost the sole
evidence against the accused being the testimony of the alleged owner

and his son, identifying the seed as theirs by reason of the presence of cane seed and red dirt therein. It was shown by the sheriff, on behalf of appellant, that he had cane seed in his bin, and that he had hauled the seed through red dirt before they reached the place where the supposed identification took place. This nullified the evidence of the State. These are the strongest authorities cited by appellant, and we do not think they militate against the conclusion in this case.

We find ourselves still unable to conclude that this judgment was without evidence to support it, and the motion for rehearing is overruled.

*Overruled.*