H. L. COBB v. THE STATE.

No. 17008.    Delivered November 14, 1934.
Rehearing Denied January 9, 1935.
Reported in 77 S. W. (2d) 667.

506

The opinion states the case.

*Stollenwerck & Stollenwerck,* of Hillsboro, for appellant.

*Penn J. Jackson,* Dist. Atty., and *Gean B. Turner,* Co. Atty., both of Cleburne, and *Lloyd W. Davidson,* State's Attorney of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of 99 years.

The record before us, which is very voluminous, shows that the appellant was convicted of the murder of Thomas B. Gullett upon circumstantial evidence. The salient circumstances relied upon by the State are as follows: On Saturday morning, January 20, 1934, at about 3:30 a. m., Mr. Lester Wilshire discovered that his barn, which was located about 50 yards from the highway which leads from Burleson to Alvarado and Hillsboro, was on fire. After daylight he made some investigation at and about the burned barn and discovered a charred body under a part of the tin roof which had caved in. He also found some human tracks halfway between the barn and the highway. These tracks led from the barn toward the highway. Mr. Oran Smith, the sheriff, testified that he made an examination and he found tracks leading from the barn to the highway; that these were large tracks made by a man with large feet. The officers, after having been summoned by Mr. Wilshire, recovered the charred body from the burning embers of the barn and sent it to an undertaking establishment where it was examined by Dr. McNairn who found that the back of the skull was crushed which, if inflicted while living, would have

caused death. There was also a three cornered hole in the skull above the eye. On the body was found a wrist watch, some keys, and a Texaco medal which were identified as the property of the deceased. The charred body was also identified by the teeth and some of the clothing which were not fully consumed by the fire. The appellant owned a 1928 Model A Ford coupe and he and deceased lived in the same neighborhood and were friends. About 3:30 a. m., when D. Tonnahill and some other boys were returning from a ball game at Eastland, they saw the barn on fire and when they reached a point in the road opposite the burning barn they noticed a Model A Ford coupe standing in the road about 250 yards from the burning barn. They saw some person enter the same and drive away. They noticed that only the light on the right hand side of the car was burning. On the following Tuesday, when the appellant was arrested, he was found in possession of a 1928 Model A Ford coupe at which time the lights on said coupe were tested by the officers and the test disclosed that only one light, that is, the light on the right hand side of the car, would burn. An inspection of the tires on his car revealed a Firestone tire on the left rear wheel, a Goodyear tire on the right rear wheel, a Star tire on the left front wheel, and a Brunswick tire on the right front wheel. The tread on the tire of the right rear wheel was worn off at one place to the fabric, about four or five inches in length. The Firestone tire on the left rear wheel had a square on the side where the tread was worn off. The Star tire on the left front wheel also had the tread worn off except on the sides. It had a straight mark.

On the fatal night some time about midnight, the city marshall at Alvarado saw the appellant enter a cafe and drink some coffee. He noticed a boy sitting in the car with appellant but did not recognize him. They were driving a Ford coupe and the two left in appellant's car going in the direction of Fort Worth. The next morning the appellant's car, which was a 1928 Model A Ford coupe, with the number plate turned back, was found standing in the public road five miles south from the town of Blum and approximately two miles from where appellant's brother-in-law lived. This was between 7 and 8 o'clock a. m., at which time the radiator was still warm. The distance from Burleson, where appellant lived, to the town of Blum is approximately 32 miles. The appellant was a large man and had large feet. On the afternoon of said day the deceased was at a hamburger stand in the city of Hillsboro where he displayed a small roll of currency. The appellant was also in

Hillsboro on said afternoon and was seen talking to deceased at the hamburger stand and when they separated the appellant said to deceased, "Be sure and be there." The deceased left Hillsboro for his home at about 5 p. m. and after having had his evening meal he and J. W. Tanner went to the home of Mr. Baugus where they visited two young ladies. They left the Baugus' home together in deceased's car at about 10:15 and when they reached a point in the road opposite Mr. Tanner's home Mr. Tanner got out of the car to go to his home, at which time deceased told Mr. Tanner that he was going to meet the appellant at Boyd Hill at 11 o'clock from where they would go to New Mexico. About 11 o'clock when J. D. Allison was on his way home from Hillsboro, he passed the deceased at a point about one hundred yards north of Aquilla creek and south of Boyd Hill. After he had passed the deceased he noticed the deceased had turned around with his car as if he was going back in the direction from which he had come. In passing, Mr. Allison noticed a Model A Ford coupe standing by the side of the road between Aquilla creek and Boyd Hill but he did not recognize the car and did not see anyone in or about the car. The deceased's car was found the next morning under a shed in a blacksmith's shop in the town of Peoria. An investigation of the ground and the car tracks between Aquilla creek and Boyd Hill where Mr. Allison saw a Ford coupe parked by the side of the road disclosed that the car which he saw left an impression on the ground which corresponded with the worn places on the tires of the appellant's car. It had rained a little and the car tracks were plainly visible on the ground.

Mrs. Viola Williams testified that on Tuesday prior to the fatal Friday night, when she attempted to make up the deceased's bed, she took a pair of trousers from his bed and when she did so some money fell out of the pockets; that she picked it up, examined it, and found that there were three ten dollar bills and four five dollar bills in the same. On Friday morning, January 19, 1934, the appellant, deceased, and some of the neighbor boys were out rabbit hunting. During the progress of the hunt the appellant and deceased would at times drop behind the balance of the boys and engage in a conversation which was not understood by any one of the boys. Leola Bateman, who worked in a cafe at Hillsboro, testified that she knew Earl Heath, a brother-in-law of the appellant and that Heath had offered to pay her $20 if she would swear that she was with appellant on said Friday night at midnight. The appellant did not testify in his own behalf but he proved by his brother-in-

law, Earl Heath, and Mrs. Heath, his sister, that he arrived at their home Friday night between 2 and 4 o'clock a. m.; that they did not have any clock or watch but judged it to be about that time. He proved by D. B. Cook that he, Cook, sold a Star and a Brunswick tire to appellant, but Cook was not certain whether this occurred on the 20th of December or the 20th of January. He also proved by Buck Walker that he, appellant, was in Hillsboro on Friday night up to midnight. He proved by his father, J. D. Cobb, that he, the appellant, left home on Friday afternoon and did not return until Monday evening. The appellant's whereabouts from the time he was last seen in the town of Hillsboro on Friday night until he appeared the next morning at the home of his sister, Mrs. Earl Heath, was not accounted for by anyone.

By a number of bills of exception appellant complains of the action of the trial court in declining to submit to the jury his requested special instructions, the first of which directed the jury to return a verdict of not guilty; the second was a combination of general legal principles; the third was an instruction to the jury not to consider the testimony of Mrs. Viola Williams. The fourth and fifth special requested charges were on the weight of the testimony and were properly overruled. The court gave an adequate charge in which he submitted every issue raised by the testimony, and therefore did not commit any error in declining to submit any of the appellant's requested instructions.

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the district attorney to ask Dick Hamilton, a special ranger, the following question: "Did you look for any tracks around the barn?", to which the witness answered, "I did"; then the following question was propounded: "Did you find any tracks?", but no answer seems to have been made by the witness to said question, and if he did the bill of exception fails to show it. In such a condition the bill fails to show error. Bill of exception No. 3 is in the same condition. Bill of exception No. 4 is without merit and is overruled. Bill of exception No. 5 is in the same condition as bill of exception No. 3.

By bill of exception No. 6 the appellant complains of the action of the trial court in permitting the witness Oran Smith to testify that appellant had large feet. We think this testimony was admissible in connecion with the other testimony introduced to the effect that the human tracks leading from the burned barn to the highway were large tracks, 12 inches long.

Bill of exception No. 7 fails to disclose what answer, if any, the witness made to the question, and therefore is incomplete and shows no error.

By bills of exception Nos. 8 and 9 the appellant complains of the action of the trial court in permitting Mrs. Williams to testify that on Tuesday prior to Friday night, when deceased was killed, she picked up the deceased's trousers which were lying on his bed and when she did so a roll of currency dropped out of the pocket; that she picked it up and found that there were three ten dollar and four five dollar bills in said roll. We believe that this testimony was admissible as a circumstance in connection with the other testimony given by another witness that on Friday afternoon, something less than 10 hours prior to the time deceased was killed, that he exhibited a roll of currency at the restaurant in Hillsboro because it tended to establish a motive for the killing, and in support of the views herein expressed we refer to the case of Early v. State, 9 Texas App., 476; Howard v. State, 13 S. W. (2d) 80; Bozan v. State, 12 S. W. (2d) 788; Moore v. State, 296 S. W. 308.

Bill of exception No. 10 is in the same condition as bill of exception No. 7 and is overruled.

By bill of exception No. 11 the appellant complains of the action of the trial court in permitting the district attorney to ask the witness Bud Bailey the following question: "You don't mean to take back what you said?" The surrounding facts stated in the bill show that the witness had made some statement which left the district attorney in doubt, and perhaps the jury also, of what he really meant and the idea which he intended to convey and said question was propounded to the witness to clear up and make plain his testimony. This question was asked the witness on redirect examination and after the witness had previously testified on direct examination to the same facts brought out in response to the question complained of. We see no possible harm that could have resulted to the appellant by reason of the asking of said question.

By bill of exception No. 12 the appellant complains of the action of the trial court in permitting the district attorney to propound to the witness Bud Bailey the following question: "Have you ever heard about any trouble about a saddle?", to which the witness answered, "Yes." The objection to this testimony was that the incident occurred probably some years prior to the time of the alleged killing, that it was an extraneous matter and too remote to show any animosity, ill will or ill feeling, and was prejudicial, irrelevant and immaterial. The court

qualified said bill and in his qualification states that the appellant's counsel had questioned said witness as to whether he had heard of any ill feeling between appellant's and deceased's families and the question complained of was along the same lines of inquiry opened by the appellant. In view of the qualification of the court, to which no objection was made on the part of the appellant, we do not think the bill discloses any error.

By bills of exception 13 and 14 the appellant complains of the admission of the testimony of Mr. Tanner to the effect that the deceased had told him that he was going to meet the appellant at Boyd Hill from where they were going to New Mexico. This testimony was admissible as showing his object in going to Boyd Hill and his destination where he was seen about 11 p. m. There is nothing in this record which would bring the testimony objected to within the rule showing undisclosed motive on the part of the deceased but falls within the rule announced by this court in the case of Chance v. State, 68 S. W. (2d) 212; Porter v. State, 215 S. W., 201; Mercado v. State, 258 S. W., 180; Washington v. State, 19 Texas App., 521.

Bills of exception 16, 17, 18, and 19 fail to disclose any error. The testimony complained of in bill of exception No, 21 is substantially the same as the testimony given by the appellant's witness Jim Cobb; besides, the court instructed the jury not to consider the same. Under the facts as disclosed by the bill of exception we do not think any error was committed by the trial court.

By bill of exception No. 22, which the appellant denominates a bystanders' bill, he complains of the argument of the county attorney, contending that the county attorney referred to the appellant's failure to testify. The bill shows that it was signed and sworn to by Mabel Moorman, a stenographer in the employ of the appellant's attorney, Muzette Cobb, a sister of the appellant, and Marguirette Cobb, a sister-in-law of the appellant. Under our statutes the appellant may procure bystanders' bills of exception when he is dissatisfied with the bills prepared by the court; where the court refuses to approve the bills presented to him, or where the defendant deems the judge's qualification to a bill incorrect. The word "bystander" has been held to mean one who has no concern with the business being transacted: An uninterested looker-on. Under the interpretation placed on the word "bystander," it is doubtful if appellant's sister and his sister-in-law come within the meaning of a bystander as used in our statute. See the rule announced by this court in the case of Walker v. State, 227 S. W., 308, and Hunt v. State, 229 S. W.,

**512**

869. Besides, the bystanders' bill is contested by the State and controverted by the affidavits of the county and district attorney, two of the jurors who sat in the trial of the case, in addition to the certificate of the presiding judge.

The appellant strenuously insists that the evidence does not warrant the conviction. In the case of Bradford v. State, 88 Texas Crim. Rep., 122, this court, speaking through Judge Lattimore, said the sufficiency of circumstantial evidence "in the first instance is a question for the jury, and the duty of this court, in its reviewing capacity, is to determine whether there is any evidence in the record upon which the verdict might have foundation." In order to justify this court in reversing the case because of the insufficiency of the evidence, it must appear that the verdict of the jury finds no support in the facts and circumstances proven or is so manifestly against the great weight of the testimony as to make probable the fact that the verdict is the result of passion or prejudice. Does the record before us show such to be the case? We think not. In determining the sufficiency of the testimony to support the verdict of the jury, we must view the State's testimony in its strongest light. Under the circumstances hereinabove set out, we do not think that we would be justified in holding that there is not sufficient testimony upon which the jury could predicate a verdict of guilty.

Finding no error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have given careful consideration to the original and supplemental motions for rehearing herein in which appellant's attorneys exhibit painstaking care and study of the facts which they insist are not of that cogent and convincing character as should be held sufficient in a case of circumstantial evidence.

That deceased was killed by some one on Friday night, January 19, 1934, seems beyond question. We have carefully gone over the testimony of each witness. That for the defense is in many instances directly contrary to that for the State,—a condition which was for the jury to solve and reconcile, and they

having settled these conflicts against appellant, we are left but the question as to whether from the State's standpoint there is enough criminating evidence to justify the conclusion of guilt.

Two witnesses saw appellant in conference with deceased in Hillsboro on the afternoon of said day, and heard appellant in the late afternoon tell deceased to "Be sure to be there." From Hillsboro deceased went to his father's home ten miles west. He left his home about dark in his sister's car to go see his girl who lived near Whitney. He went first to the home of J. W. Tanner, and the two then went in the car together to see the Baugus girls. They stayed at the Baugus home until about ten o'clock p. m., and left together going back by Tanner's home. Arriving here, they talked in the car a while and deceased told Tanner he was leaving that night, was going to meet appellant at eleven o'clock that night at Boyd Hill, and was going with him to New Mexico. Boyd Hill was not far from Aquilla creek, some two miles from the residence of the father of deceased and nine miles from the home of Tanner. One Allison saw deceased in a car on the road that night about a hundred yards from Aquilla creek between eleven and twelve o'clock, and a little distance away this witness said he also saw a Model A Ford coupe black car parked at the foot of Boyd Hill. This witness had seen appellant use a car answering this description. The next morning the car used by deceased that night was found under a shed at Peoria, a village three miles from the home of deceased and about six miles from Hillsboro. From Hillsboro a highway north leads by Alvarado, in Johnson County, on by Burleson to Fort Worth and northwest to New Mexico.

Whisenant, city marshal at Alvarado, in the discharge of his duties, was up and around the town during the Friday night in question. He testified that about two a. m. that night this appellant, who was well known to witness, came into a cafe in Alvarado and drank a cup of coffee. Witness said there was a young man in appellant's car who did not get out. The car was a Model A Ford coupe. This witness watched the car go west, then turn north toward Burleson and Fort Worth. Burleson is the next town north of Alvarado on that highway. The place where the body of deceased was found in a burned barn was about a mile east of Burleson on this highway. Another witness who had been to Eastland and was on his way home that night, passed the burning barn at three o'clock and saw a Model A Ford black coupe parked near the highway, and a man was either getting in or out of this car, which had but

one head light. The car of appellant, after it was found, was discovered to have only one headlight. The watch in the pocket of deceased stopped at 3.05. The car of appellant was found the next morning between Blum and Whitney, gathered from the testimony to be between forty and fifty miles from Burleson. The number plate on the front of appellant's car was turned backward. Pistol cartridges were found in the car. The radiator of the car was still warm. Appellant did not testify. He put on witnesses to swear to an alibi. If their testimony had been accepted, the jury would have had to believe Mr. Whisenant, the Alvarado witness, testified falsely. We have not attempted to recite all of the facts appearing in the record, but have merely set out enough to justify ourselves in the conclusion that the facts in the case supported the jury's finding of guilt.

The motion for rehearing will be overruled.

*Overruled.*

HAWKINS, J., absent.