MORRIS v. FIRST STATE BANK OF DALLAS et al. (No. 1724.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 18, 1917.)

1. PLEADING ⊜⊶20 — ALTERNATIVE ALLEGATIONS—USURY.

It appearing that the transaction was usurious from the facts pleaded to show it, the fact that the pleading designated as "exchange or interest" the sum deducted for use of money, but which by provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 4973, is interest, does not render the pleading insufficient.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 43.]

2. BILLS AND NOTES ⊜⊶408 — REFUSAL OF DRAWEE TO PAY—NECESSITY OF PROTEST.

By provision of Vernon's Sayles' Ann. Civ. St. 1914, arts. 579, 581, the holder of a check may, without protest for nonpayment, sue the drawer and indorser; action being begun before the next term of court.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1019–1021, 1113–1128.]

3. BILLS AND NOTES ⊜⊶444 — REFUSAL OF DRAWEE TO PAY—NECESSITY OF RETURN.

The holder of a check may, on the drawee refusing payment, sue the indorser without returning the check to him, having credited his account with the amount thereof and paid his drafts, reducing his balance below such amount.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1287–1293.]

4. USURY ⊜⊶26 — DISCOUNTING CHECK FOR DRAWER.

It is usury for one to discount a check for the drawer, retaining more than legal interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 57, 58, 62.]

Appeal from District Court, Upshur County; R. M. Smith, Judge.

Action by First State Bank of Dallas against R. A. Morris and others. From an adverse order, the named defendant appeals. Judgment affirmed.

Appellee P. J. Sewell operated a sawmill near Bettie, in Upshur county, and had an account with appellee First Guaranty State Bank of that place. Appellant, in the name "Camp County Bank," was in the banking business at Pittsburg, in Camp county, which adjoins Upshur county. At various times between January 20, 1914, and February 9, 1916,

Sewell drew checks, 71 in number, on said First Guaranty State Bank, hereinafter called the Bettie Bank, in favor of himself or bearer, for sums ranging from $25 to $5,500 and aggregating $118,560, each of which, after Sewell had indorsed it, Morris cashed at a discount of 1 per cent. of its face value, and some of which, after so discounting and cashing them, he indorsed and sent to appellee First State Bank of Dallas, hereinafter referred to as the Dallas Bank, for credit on his account with it. Each of said checks, it seems, was paid by the Bettie Bank within a few days after its date. February 10, 1916, Sewell drew a check on the Bettie Bank in favor of himself or bearer for $5,500, and February 15, 1916, drew another check on said Bettie bank in favor of himself or bearer for $3,000, each of which, after Sewell indorsed it, Morris cashed at a like discount, and then, after himself indorsing it, sent it to the Dallas Bank for credit on his account. The Bettie Bank refused to pay these two checks when presented to it by the Dallas Bank, on the ground that Sewell did not have with it funds sufficient for the purpose. This suit was by the Dallas Bank against Sewell, as the drawer of the two checks, and Morris, as an indorser thereof, and also against the Bettie Bank. In his answer to the suit Morris, among other things, alleged that he sent the checks to the Dallas Bank for collection, with instructions to protest same if they were not paid when presented to the Bettie Bank, and that the Dallas Bank failed, when payment thereof was refused, to have them protested as directed; and, further, that the Dallas Bank, instead of promptly returning the checks to him when the Bettie Bank refused to pay them, retained them in its possession; and then further alleged that Sewell was solvent at the time the checks should have been returned to him, but afterwards became insolvent. Exceptions interposed by the Dallas bank to these allegations were sustained by the court. Sewell in his answer admitted that he owed the sum of the two checks, "less the sum of $1,270.60 with penalties," which he claimed a right to have credited against same. This claim was based on a contention made in his answer that the arrangement between himself and Morris, by which the latter cashed the 71 checks paid by the Bettie bank as stated, and the two checks sued upon, which it refused to pay, was a scheme whereby Morris loaned him money at a usurious rate of interest. By a cross-action Sewell sought, in the event it appeared he was not entitled to the credit as claimed by him, a recovery against Morris of the sum of $2,548.10, which, he alleged, was the aggregate amount of the usurious interest which he had paid to the latter, and the statutory penalty thereon, on the 71 checks, and agreed to pay on the 2 checks sued upon. The scheme devised to avoid the usury law, as charged by Sewell,

is shown by allegations in his answer as follows:

"This defendant says: That in the latter part of December, 1914, he applied to R. A. Morris of the Camp County Bank, his codefendant, for accommodation in the way of loans to operate his sawmill, etc., that the said R. A. Morris and the Camp County Bank loaned to and advanced to this defendant the sum of $127,060. That the above aggregate amount of said loans were made as follows by means of checks given as follows: [Here follows a tabulated statement showing the number, date, date of payment, and amount of each of the 71 checks, the amount of "exchange or interest charged" thereon, and the amounts and "change or interest charged" on the two checks sued upon.] That each and all of the business had and done with the said R. A. Morris and the Camp County Bank, except four small checks—one for $20, one for $35, one for $25, and another for $25—were given during the year 1915, up to and including the 15th day of February, 1916. That said business was done in the way and manner as follows, to wit: This defendant would draw a check on the First State Bank of Bettie, Tex., payable to himself or order, and indorse same, and sell same to R. A. Morris and the Camp County Bank. That the said Morris and the Camp County Bank would indorse said checks and send same to the First State Bank of Bettie, Tex., for payment. That said checks given for amounts and on the dates above set out reached the First State Bank of Bettie, Tex., on the dates above set out. That said time was less [than], or about, 15 days from the time of drawing said checks. That said checks were either paid or returned by the First State Bank of Bettie, Tex. That the said R. A. Morris and the Camp County Bank did charge and collect from this defendant 1 per cent. on the amount of each and all of said checks. That defendant R. A. Morris and the Camp County Bank for this defendant's check would deduct 1 per cent. of the full amount of said check, and pay this defendant the difference either in cash or in cash and the Camp County Bank's check, or both. That the said R. A. Morris of the Camp County Bank would represent to this defendant that he was charging him the usual, lawful, and customary interest, or exchange, on said check, and each of said checks. But this defendant says and charges that the defendant R. A. Morris and the Camp County Bank well knew he so charged and collected said interest or exchange, that the same was unlawful, and was more than at the rate of 105 per annum and was usurious rate of interest or exchange. That this defendant charges that the plan, scheme, and device was used for the purpose of and in an effort on their part to evade and defeat the usury laws of the state of Texas."

An exception interposed by Morris, questioning the sufficiency of the allegations just set out to entitle Sewell to the relief he sought, on the ground that they were "indefinite and uncertain as to whether the charge was interest or exchange, and there is no law fixing the rate of exchange," was overruled by the court.

The trial was to the court without a jury. The testimony showed the facts with reference to the checks to be, substantially, as alleged in the part of Sewell's answer set out above.

The appeal is from a judgment, so far as it is material to state it, in favor of the Dallas Bank against Morris for the amount of the two checks sued upon, less a credit of $601.82, which the court found he was en-

titled to, and in favor of Morris over against Sewell for the amount of said checks, less the sum of $2,457 "awarded," it is recited, "as a recovery of usury and penalties in favor of the defendant P. J. Sewell against the defendant R. A. Morris." The appeal is by Morris alone.

E. A. King, of Pittsburg, and Warren & Briggs, of Gilmer, for appellant. Cockrell, Gray & McBride, of Dallas, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] In support of his first assignment Morris insists that the allegations in Sewell's answer set out in the statement above and forming the basis of his cross-action were insufficient, because indefinite and uncertain, in that it did not appear therefrom whether the 1 per cent. of the face of the checks deducted by Morris when he cashed them was a charge by him of "interest" or "exchange." The basis of the contention is the fact that the pleader designated the 1 per cent. deducted as "interest" or "exchange." The argument seems to be that, if the 1 per cent. was retained as "exchange," Sewell was not entitled to the relief he sought. The contention is overruled. "Interest" is defined by the statute as "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." Article 4973, Vernon's Statutes. It was alleged in the pleading in question that the moneys paid to Sewell on the checks were loans, and that the sums paid and agreed to be paid by him for the use of same were in excess of what the law allowed. The facts relied upon to show the transactions to be usurious having been alleged, we think it was of no importance, it appearing from those facts that the transactions were usurious, that the pleader designated the sums deducted for use of money as "exchange."

[2, 3] The court did not err when he sustained the exception to the part of Morris' answer setting up as a reason why the Dallas Bank was not entitled to recovery against him, its failure to have the checks sued upon protested for nonpayment at the time they were presented to the Bettie Bank. It appeared that this suit was commenced before the first term of the Upshur county district court after the right of action in favor of the Dallas Bank accrued. Articles 579, 581, Vernon's Statutes. Nor did the court err when he sustained the exception to the part of said answer setting up as a defense against the recovery sought against Morris by the Dallas Bank the failure of the latter to promptly return the checks to the former when the Bettie Bank refused to pay them. Having credited the account Morris had with it with the amount of the checks and paid drafts of his, reducing his balance with it to $601.83, the Dallas Bank had a right as against Morris to hold the checks until it was paid the amount thereof less said $601.83.

[4] It is next insisted that the judgment, in so far as it is in favor of Sewell against Morris for $2,457.10 on account of usury in the transactions between them, is "contrary to the law and the evidence," in that, quoting from the brief:

"(A) There is no evidence whatever that this defendant ever loaned the said Sewell any sums of money whatever, or charged him any interest whatever. (B) The evidence shows that in all transactions between this defendant (Morris) and P. J. Sewell the defendant purchased and paid for sight drafts drawn by the said P. J. Sewell on the First State Bank of Bettie, and that the only charges he made were for exchange or discount."

We agree that what the testimony showed was as stated, in effect, in the quotation just made from the brief, to wit, that Morris acquired the checks by discounting them; but we do not agree that the trial court therefore was not authorized to find that the transactions were usurious. "To discount" commercial paper is "to take interest in advance, and in banking is a mode of loaning money." Weckler v. Bank, 42 Md. 581, 20 Am. Rep. 95; Black v. Bank, 96 Md. 399, 54 Atl. 88. The rule applicable to the conceded and undisputed facts is stated in 39 Cyc. p. 935, as follows:

"When the chose discounted is obtained directly from the maker or before it has acquired validity by a transfer for value, it can be nothing more than the maker's promise to pay, and the purchase of such a promise at a discount exceeding the lawful rate of interest is merely making a loan at a usurious rate."

By Mr. Daniel (1 Negotiable Instruments, § 753) as follows:

"If a note is offered for discount by the maker, it is plainly usurious, as between him and the party to whom it is delivered, if the discount from its face value were greater than that allowed upon a loan."

And by Prof. Paige (1 Contracts, § 477) as follows:

"If the vendor sell an obligation on which he is primarily liable, at such discount (that is, at a discount to exceed the maximum rate of interest), the transaction is merely one of giving an obligation for a larger sum than the debt, and is usurious if the discount exceeds the maximum rate of interest."

There is no error in the judgment, and it is affirmed.