**A. B. LEWIS CO., Inc., Appellant,**

v.

**NATIONAL INVESTMENT CORPORATION OF HOUSTON, Appellee.**

No. 6.

Court of Civil Appeals of Texas. Houston (14th Dist.).

Nov. 15, 1967.

Rehearing Denied Dec. 13, 1967.

John Gano, Joseph D. Jamail, Houston, Donald W. Keck, Fritz & Vinson, Dallas, for appellant.

R. .H. Singleton, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

TUNKS, Chief Justice.

This is a usury case. A. B. Lewis Co., Inc., plaintiff in the trial court and appellant here, alleged that certain payments made by it to National Investment Corporation of Houston, appellee, during the period from April, 1958, until May, 1960, were payments of usurious interest under the terms of Article 5073, V.A.T.S. Plaintiff sought recovery of double the amount paid as alleged usurious interest.

A. B. Lewis Co., Inc., is a Texas corporation. Its president is A. B. Lewis. In April, 1958, it was engaged in the used car business in Houston, Texas. At such time it desired to expand its business and sought to get the capital for such expansion from the defendant, National Investment Corporation of Houston, also a Texas corporation.

After some preliminary negotiations, the plaintiff, acting through its president, A. B. Lewis, and the defendant, acting through its vice-president, H. C. Hendrix, entered into an oral agreement. The substance of that agreement is in dispute, and that dispute is the subject matter of this lawsuit. The plaintiff contends that it was an agree-

ment to loan money at interest. The defendant contends that it was an agreement wherein it, the defendant, agreed to buy, at discount, the conditional sales contracts through which the plaintiff sold its automobiles.

According to the testimony of Hendrix, the vice-president of the appellee, the agreement was to the effect that appellee would buy the conditional sales contracts representing sales by appellant of its automobiles; that appellee would discount those contracts at 6% per annum or ½ of 1% per month; that appellee was to hold 25% of the face value of each sales contract in reserve until the contract had been paid in full; that the reserve amounts so withheld were to be returned to appellant during the month following the final payment to appellee of the face amount of each sales contract; and that if the account was paid off in advance, appellant was to be given credit for the reserve so held on the account.

The testimony of A. B. Lewis, president of appellant, was not substantially different as to the mechanics arranged for in the basic agreement between the two parties. He, however, testified that the parties referred to the transaction as a loan to be secured by a pledge of the conditional sales contracts rather than a sale of the contracts.

Also in the agreement of April, 1958, it was agreed that when appellant tendered to appellee for acceptance one of its conditional sales contracts, it would be accompanied by a credit report on the customer of appellant, the obligor of the contract, and appellee reserved the right to reject such of those contracts as it did not wish to accept.

During the period of time in question, more than 500 individual transactions occurred in the carrying out of the terms of the basic agreement. In each individual transaction appellant would present to appellee a conditional sales contract upon a form selected by appellant and having in it the following language:

"Purchaser hereby agrees that the seller may sell or assign this contract, and all the seller's rights and interests shall pass to the purchaser of this contract."

The back of the conditional sales contract form used by appellant in its business had a form for assignment without recourse and a form for assignment with recourse. Those printed assignment forms, however, were not actually used in the transactions. Instead, there was stamped onto the back of the conditional sales contract form an agreement used by the parties in effecting the transfer from appellant to appellee. That stamped assignment form read as follows:

"For value received, we hereby sell, assign, transfer and set over the foregoing obligation to National Investment Corporation of Houston, with full recourse on us.

A. B. LEWIS CO., INC.

By _____"

In each of the transactions between the parties, that form, above quoted, was signed by the transferor and the conditional sales contract was actually delivered to appellee.

The following example will demonstrate the procedures followed by the parties in carrying out the terms of their basic contract. If a conditional sales contract transferred provided for a principal amount of $1,000.00 payable by the buyer of the automobile, within one year from its date, there would first be deducted the amount of $60.00 as representing the "discount." Next, there would be deducted the amount of $250.00 as representing the "reserve." The total deductions would, therefore, amount to $310.00, and the net amount received by the appellant would be $690.00.

In each transaction the appellant would deliver to appellee not only the conditional sales contract but also the title certificate for the automobile involved. That title certificate would reflect that the holder of the

lien on the automobile given to secure the payment of the conditional sales contract was A. B. Lewis Co., Inc. Nothing was done by appellee to record the transfer to it of the conditional sales contract nor otherwise to record any lien which it might have against the automobile to secure the payment of the conditional sales contract.

These conditional sales contracts so transferred to appellee were payable in installments. Pursuant to the agreement between parties, the buyer of the automobile continued to make his installment payments to A. B. Lewis Co., Inc., rather than to appellee. While these conditional sales contracts had on them the above quoted recitation to the effect that they were assignable, they also had on them a provision to the following effect:

"Payment to any other than A. B. Lewis Company does not constitute payment hereunder."

In accordance with the uniform practice, the customer, that is the person who had bought the automobile and executed the conditional sales contract, was not told that the contract had been assigned to appellee.

As to the "reserve" withheld by appellee, it was not paid back to appellant nor credited to appellant until the entire principal amount of the contract had been paid. That is to say, in the above hypothetical transaction where the face amount of the conditional sales contract was $1,000.00, the $250.00 was not paid back to appellant nor credited to appellant when there had been payments of $750.00 on the account. Seven hundred fifty and 00/100 Dollars would represent the amount of the net cash received by appellant together with the $60.00 "discount" charge. Nevertheless, on that hypothetical transaction, appellant would have to see that appellee was paid the entire $1,000.00 before the appellant would be entitled to have paid back to it, or credited to it, the $250.00 withheld as a "reserve."

Appellant does not contend that a bona fide purchase of a written obligation at a discount is illegal, even if the discount is more than 10% per annum. Appellant alleges, however, that appellee did not intend to actually purchase the obligations evidenced by the sales contract and that the use of the form of purchase at discount was, in fact, a subterfuge to conceal the collection of usurious interest.

Appellee, on the other hand, does not deny that if these transactions were loans secured by a pledge of the conditional sales contracts so that the amounts of money paid to appellee by appellant were interest rather than discounts, then the payments would exceed the lawful interest rate of 10% and constitute usury.

At the conclusion of the testimony, appellant moved for an instructed verdict, which motion was overruled by the trial court. The trial court submitted to the jury special issue No. 1 in the following language:

"Do you find from a preponderance of the evidence that the transactions between the plaintiff, A. B. Lewis Co., Inc., and the defendant, National Investment Corporation of Houston, which are listed on plaintiff's Exhibit 'A', were loans of money by the defendant to the plaintiff?"

The jury answered that special issue No. 1: "We do not." The trial court entered judgment on the verdict that plaintiff take nothing from the defendant. Plaintiff's motion for judgment n. o. v. and motion for new trial were overruled and appeal to this court was perfected.

The appellant here contends that the evidence shows as a matter of law that the transactions between it and appellee were loan transactions, that the payments made by it (the "discounts" withheld by appellee) were payments of usurious interest so that the trial court should have granted its motion for instructed verdict or its motion for judgment notwithstanding the verdict and

we should here reverse the judgment of the trial court and render judgment for appellant in the amount of the payments so made.

Alternatively, the appellant contends that the jury's finding to the effect that the transactions were not loans is so against the weight of the evidence that the judgment of the trial court, based on such finding, should be reversed and remanded.

The crux of the cause of action alleged by plaintiff is set forth in the following quotation from plaintiff's trial petition:

"Plaintiff further alleges, in connection with the foregoing allegations concerning a contractual agreement whereby defendant advanced monies to plaintiff in connection with the various contract of conditional sale setforth in Exhibit 'A', that the use by defendant of such terminology as 'discount' and the rubber stamp 'assignment' offered and furnished by defendant constituted a *sham and subterfuge* for the purpose of undertaking to conceal the true intent of defendant to charge and collect from plaintiff usurious interest in connection with each and all of the various loan transactions." (Emphasis added)

In American Mortg. Corporation v. Dunnam, Tex.Civ.App., 59 S.W.2d 1095, writ dism., which case involved a suit by a borrower to recover allegedly usurious interest, the court, at p. 1096, said:

"The appellee in his pleading recognized that in order to recover it was necessary to show that there was some scheme, devise, or subterfuge, by pleading that the appellants were engaged in a conspiracy and fraudulent scheme to loan money and charge for the use thereof, more than 10 per cent. per annum on the amount of the loan, and, as the facts were controverted, in order for him to recover, it was necessary to secure a finding of the jury on such issue."

■ However, the fact that the transaction took the form of a valid sale of a contract at discount does not necessarily mean that the transaction was, in fact, valid. The courts will look through the form of transaction used by the parties to determine their real intent. If the intention of the parties to this contract was to make loans secured by collateral assignments of conditional sales contracts and providing for the payment of interest at a greater rate than 10% per annum, the fact that the transaction, as a subterfuge, took the form of a sale at discount will not preclude the plaintiff's recovery. Western Guaranty Loan Co. v. Dean, Tex.Civ.App., 309 S.W.2d 857, writ ref., n. r. e.; Commercial Securities Co. v. Rea, 130 Tex. 11, 105 S.W.2d 872.

If, therefore, the evidence here is such that it showed, as a matter of law, that the purported sales of the contracts were subterfuges to conceal an intent to charge usurious interest, and that the transactions between the parties were, in fact, loans, then appellant is entitled to have the trial court's judgment reversed and judgment here rendered in it's behalf. If there is insufficient evidence here to support the jury's findings to the effect that the transactions in question were not loans, then appellant is entitled to a judgment reversing the judgment of the trial court and remanding the case for another trial.

■ We are of the opinion that, not only is there some evidence to the effect that the transactions were sales at discount of the contracts, but also that the jury's finding to the effect that those transactions were not loans is supported by sufficient evidence and is not so against the weight of the credible evidence as to require that jury's finding to be set aside.

David E. Snelling, president of appellee, testified that in negotiations leading up to the oral contract which was made in April of 1958, A. B. Lewis' request to him was that he, Snelling, purchase automobile paper from appellant and that appellant did not request that appellee make a loan of money to it.

Clay Hendrix, vice-president of appellee, testified that in the conference wherein the oral agreement was consummated, the parties referred to the transaction as an agreement for sale and purchase of conditional sales contracts.

A resolution passed by the Board of Directors of appellant corporation authorized the assignment of its conditional sales contracts without any recitation to the effect that such assignments were to be by way of pledge only.

The various documents, themselves, used by the parties in the consummation of the transaction and the recitation in those documents, may be considered evidence as to the parties' intention. The conditional sales contracts themselves contained a provision to the effect that the seller of the automobile was authorized to sell or assign the contracts. The very language of the assignment itself purports to be an unconditional sale, assignment and transfer of the contract to the appellee. This instrument was executed in connection with everyone of the more than 500 transactions between the parties during the period of time in question. The contract assigned on each occasion was physically delivered to appellee. This, of course, is not inconsistent with the pledge of the contract; but it is not inconsistent with the sale of the contract, either.

The fact that the appellee required that it be furnished with a credit report of the buyer named in each of the sale contracts purchased by it, together with the fact that appellee on some occasions declined to accept contracts which it considered to be poor risks, is consistent with an intention on the ·part of appellee that it acquire ownership of the contract by virtue of the assignment.

The transactions between the parties were shown on the records of the appellee as purchases of contracts at a discount and not as loans of money.

The fact that the buyers of the automobiles were not notified of the assignment and did not make payments directly to appellee, but rather made all payments to appellant, would be, if standing alone and unexplained, most persuasive evidence to the effect that the transactions were loans secured by pledges of the contracts rather than purchases of the contracts at discount. However, there is testimony to the effect that this arrangement was at the specific request of Mr. A. B. Lewis, president of appellant. The very contracts, themselves, so assigned, contained a provision to the effect that payment to anyone other than A. B. Lewis Company did not constitute payment of the contract. There is testimony to the effect that Lewis requested that his company continue to collect the payments on the contracts because he wanted to keep in contact with his customers, who were. repeat customers, with the hope of selling them other automobiles.

The fact that A. B. Lewis Company remained liable to appellee for the full amount of each contract assigned to it is consistent with a transaction which is a loan of money secured by a pledge of the contract. The fact is, however, that the language of the document used to effect the assignment "with full recourse" was to impose a contingent obligation on appellant to pay the amount of the sales contract if the buyer of the automobile did not do so. Such an obligation is not inconsistent with a sale of the contract rather than a pledge to secure a loan.

The fact that appellee did not cause the liens on the automobiles which were the subject matter of the assigned contracts to be placed in its name is evidence in support of the proposition that the transaction was in fact a loan rather than a sale. In view of the explanation given by the witness, Hendrix, in his testimony as to the reason for that fact, we certainly cannot say that that fact alone constitutes conclusive evidence that there was no sale. Hendrix testified that Lewis requested that the automobile purchaser not be informed of the assignment under the arrangement· between the two parties. It was at the re-

quest of Lewis that A. B. Lewis Co., Inc., was to repossess any automobiles on which the payments were not made. Hendrix testified that one reason why liens on the automobiles were not caused to be recorded in the name of the appellee was to avoid the clerical work that would be involved in those situations where repossession was effected by appellant. Another reason given by Hendrix for not so recording the transfer of the liens was in the fact that, since appellant was going to repossess those automobiles where there was a default, appellee wanted to be careful to avoid any possible tort liability for conduct in which appellant might engage in repossessing the cars.

While the agreement of the parties concerning the maintenance of a "dealer reserve" is entirely consistent with the construction of the contract as being one for the loan of money, such agreement is not entirely inconsistent with the construction of the contract as being one for sale at a discount. The sale was with full recourse on the seller and the maintenance of the "dealer reserve" was a security for the seller's contingent liability under the full recourse provision of the assignment. General Motors Acceptance Corp. v. Mid-West Chevrolet Co., 66 F.2d 1 (10th Cir.).

Hendrix testified that if the payments on a contract assigned got 90 days past due, the assignor was obliged to pay it off in full. That is to say, if A. B. Lewis Company became liable under the "full recourse" agreement, and there was a 90-day delinquency, then the payments due under the assigned contract were accelerated. On those past due payments, 10% interest was payable. The procedure of the enforcement of this liability is not made entirely clear by the testimony. Hendrix explained it in the following language:

"We had a day of each month. He knew what the day was each and every month. He had until this particular day to get his remittances in and pay up his delinquencies. If the delinquencies were not paid, the amount that was due at that time, we would charge ten per cent simple interest on it."

The fact that A. B. Lewis Company was charged 10% interest on late payments after it became unconditionally liable under the recourse provision of the assignment does not mean that the amounts withheld as discounts at the time of the assignments were necessarily payments of interest.

The language of the agreement between the parties here did not provide for payment of interest at a rate of greater than 10% per annum. In fact, the language of the agreement itself did not provide for the payment of any interest at all (except as to past-due payments after default) but rather, provided for the sales of contracts at a discount which is, on its face, perfectly legal. Under those circumstances, the plaintiff alleging that there was an agreement to pay usurious interest has the burden of proving that the contract between the parties was a sham and a subterfuge used by the lender to conceal the charging of usurious interest.

■ There is authority for the proposition that the party who claims that a transaction, valid on its face, is a mere subterfuge to conceal the charging of usurious interest, has the burden of proving that fact by "clear and convincing evidence." Griffin v. Stewart, Tex.Civ.App., 348 S.W. 2d 800, no writ history; Great Southern Life Ins. Co. v. Williams, Tex.Civ.App., 105 S.W.2d 277, no writ history.

■ Where a contract does not, by its terminology, show that it contemplates the charging of usurious interest, the question as to whether or not the contract in that form was used as a sham and subterfuge to conceal an intention to charge interest, is a question of fact for the jury. Moser v. John F. Buckner & Sons, Tex.Civ.App., 292 S.W.2d 68, writ ref., n.r.e.

In Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935 (Tex.Com.App., opinion

adopted by the Supreme Court), the Court said:

"The determination of whether or not usury exists in a contract is a matter involving first and pre-eminently the principle which is the polestar of construction, to-wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract."

The Texas cases cited to us by appellant as authority for its contentions are distinguishable from the facts of this case.

Commercial Securities Co. v. Rea, 130 Tex. 11, 105 S.W.2d 872, involved a transaction between parties quite similar to the transaction here involved. There were, however, some details as to which the transaction itself was distinguishable from the transaction between A. B. Lewis Company and National Investment Corporation. The most important distinction, however, is in the fact that in the Rea case the trial court, in a non-jury trial, found as a fact that the contract between the parties was one for a loan rather than one for the sale of accounts at a discount. The question presented to the appellate court, whose opinion is cited to us as authority, was whether there was insufficient evidence to support that finding. The holding on that question is not authority for the proposition that either the evidence in here shows a loan as a matter of law or is insufficient to support a finding by the trier of fact that the agreement was not a loan.

In Baum v. Daniels, 55 Tex.Civ.App. 273, 118 S.W. 754, no writ history, there was an admitted loan of money. The written agreement (a promissory note) provided for the payment of interest at the rate of 10% per annum. The payee of the note admitted that, pursuant to an oral arrangement, he charged an additional 8% at the time of the delivery of the note. There was an admitted loan of money and there was an admitted charge by the lender of 18% for such loan. The defense of the lender was based upon a contended for construction of the usury statute rather than a denial that he had, in fact, charged interest at a greater rate than 10% per annum. The court held against the lender as to his contentions concerning the construction of the usury statute. Under the construction which the court placed upon the statute, there could be no question but that the lender was, as a matter of law, liable for double the amount of the interest so charged by him.

In Campbell v. Oskey, Tex.Civ.App., 239 S.W. 332, no writ history, there was an advance by the defendant to the plaintiff of $750.00 to be used in a business venture. By the agreement between the parties, the plaintiff was *unconditionally* bound to pay back the $750.00 plus an additional $300.00. The defendant's contention that plaintiff's advance was an investment in a joint venture was refuted, as a matter of law, by the fact that the plaintiff was bound to pay, regardless of the success of the venture, not only the $750.00 advanced, but also an additional $300.00. In the case before us, the plaintiff did not, by the "full recourse" provision of the written assignment become unconditionally bound to pay the face amount of the assigned contracts. Its liability was conditioned on the failure of the buyer of the automobile to pay.

In Glenn v. McCarty, Tex.Civ.App., 130 S.W.2d 295 (affirmed 137 Tex. 608, 155 S.W.2d 912), a non-jury trial was had before the trial court. That court found that the notes in question were "usurious because they aggregated the sum of $8800 and only the sum of $7920 was actually loaned or advanced thereon by the Temple Trust Company, and that the discount of $880, together with the interest of 7% per annum provided in the face of the notes, together with the acceleration clause provided in the deed of trust, made it possible for the payee to collect in one year more than 10 percent, the conventional rate of interest provided by law."

The principal questions involved in that case have no relevance and bear no similarity to the questions here involved. It is to be noted that, in that case, the maker of a note providing for 7% interest, delivered it to the *payee* who discounted it 10%. That, of course, has uniformly been held to be invalid, if the amount of the discount together with the interest provided for on the face of the instrument, exceeds the lawful rate of interest. Such a transaction is not a legitimate "sale at discount." Morris v. First State Bank, Tex.Civ.App., 192 S.W. 1074, no writ history. A. B. Lewis Co., Inc., was not the maker or obligor of the contracts which it assigned to appellee. Rather, A. B. Lewis Company was the payee of negotiable instruments assigned by it to appellee.

In both Community Finance & Thrift Corp. v. State, Tex., 343 S.W.2d 232, no writ history, and Flurry v. Hillcrest State Bank of University Park, Tex.Civ.App., 401 S.W.2d 857, cited by appellee in its reply to appellant's brief, the courts were concerned with transactions that were admittedly loans of money. The questions involved were whether certain payments admittedly required exceeded the lawful rate of interest. In the first case it was held, as a matter of law, that monthly payments on an investment certificate which a borrower was required to buy and pledge as collateral as a condition to getting the loan were, in fact, payments on the loan. In the second case it was held, as a matter of law, that where the borrower was, as a condition to getting a loan, required to open a savings account assigned as a security for the loan and make monthly deposits, the monthly deposits were, in fact, payments on the loan. We do not believe that those authorities compel a holding, as a matter of law, that the transactions between appellant and appellee were loans of money rather than sales at discount.

In its points of error numbers 4, 5, 6 and 7, appellant complains of the action of the trial court in rendering a partial summary judgment in favor of appellee. That partial summary judgment was based upon findings by the trial court to the effect that the withholding of the reserves by the appellee did not amount to payments of interest by appellant and, that certain discounts withheld more than two years before the filing of this suit, were, if payments of interest, barred by the Statute of Limitations. In view of the jury's finding, above note, and our holding that such finding is supported by the evidence, the question as to the propriety of the trial court's rendition of the partial summary judgment becomes moot.

Appellee alleged, as an alternative defense, that if the contract between the parties was for loans, rather than for sales at discount, appellant still should not be entitled to recover. It was alleged that appellant was experienced in the field of automobile finance; that it was familiar with the law of usury; that it voluntarily, without any compulsion, entered into the arrangements in question; and that appellant was, therefore, estopped to seek a recovery under Article 5073, V.A.T.S. Appellant also alleged that if the arrangements between the parties was a sham and a subterfuge for the purpose of evading the usury statutes of the State of Texas, then appellant was a party to that scheme and, as such, was in pari delicto and that appellant's recovery should be barred for that reason.

The trial court submitted special issue No. 2 to be answered by the jury only if special issue No. 1 was answered "We do," in the following language:

"Do you find from a preponderance of the evidence that plaintiff, A. B. Lewis Co., Inc., voluntarily entered into such loans of money, if any, made the basis of this suit with the defendant, National Investment Corporation?"

Since the jury answered special issue No. 1, "We do not," the second issue was not answered.

Since the jury's verdict and the trial court's judgment is not based upon the al-

ternatively alleged defense of appellee, we are not required to decide whether it would or would not have been available as a defense in this case. In an annotation appearing at 16 A.L.R.3rd, 510, entitled, "Borrowers Initiation of, or Fraud Contributing to, Usurious Transactions as Affecting Rights or Remedies of the Parties" Texas is listed as a jurisdiction which does not recognize such a defense.

■ Appellant contends, however, that the very submission of the issue was so prejudicial as to constitute reversible error. With that contention we do not agree. The error, if any, was harmless. Associates Investment Co. v. Cobb, Tex.Civ.App., 386 S.W.2d 578; Moran Corp. v. Murray, Tex. Civ.App., 381 S.W.2d 324; Texas & N. O. R. Co. v. Broadway, Tex.Civ.App., 345 S.W. 2d 814, Rule 434, Texas Rules of Civil Procedure.

In connection with special issue No. 1, the trial court submitted the following special instructions: "As used in this issue, a 'loan' is a contract by which one party agrees to let another party have the use of a specified sum of money, or forbear the payment of a specified sum of money, for a definite period of time with the understanding that the borrower shall repay it with or without interest." Appellant requested that there be added to the special instructions given by the trial court the following words:

"and 'interest' is the compensation allowed by law or fixed by the parties for the use, forbearance or detention of money;"

Alternatively, the appellant requested that the following language be added to the special instruction given by the court:

"Interest that exceeds 10% per year (annum) when computed on the declining balance method is 'usurious interest'."

Appellants' requests were refused and appellant objected. The trial court's action in this regard is assigned as error.

■ It is to be noted that the inquiry made of the jury in special issue No. 1 is not whether the payments made (discounts withheld) were interest, but whether the transactions involved were loans. The instruction given by the court did not make the jury's determination as to whether the transactions were loans dependent upon whether the payments (discounts) were interest. In fact, the instruction told the jury that there might be a loan even if no interest were charged or paid. Presumably, if the jury found that the transactions in question were loans, the trial court would have found, as a matter of law, that the payments (discounts) were payments of interest. The parties had stipulated that the payments (discounts), exceeded 10% per annum. The trial court properly refused to submit the requested special instructions.

Other points of error concern rulings of the trial court in admitting, over appellant's objections, testimony of A. B. Lewis concerning usages and customs in the automobile finance business and as to his own experiences therein. Most, if not all, of the testimony so received, was merely cumulative of other testimony received without objection—some elicited by counsel for appellee. As to some of the testimony complained of—the testimony of Lewis as to his prior transactions with Pacific Finance Corp.,—the trial court instructed the jury not to consider it.

■ The complained of rulings of the trial court, if error at all, were harmless errors. Mueller v. Central Power & Light, Tex.Civ.App., 403 S.W.2d 901; Brown v. Dale, Tex.Civ.App., 395 S.W.2d 677, writ. ref., n.r.e.; Medina Elec. Co-op., Inc. v. Ball, Tex.Civ.App., 368 S.W.2d 227; Rule 434, T.R.C.P.

We have given due consideration to each of the points of error presented by appellant and to the many authorities cited in its brief. We are of the opinion that the trial court committed no reversible error.

The judgment of the trial court is affirmed.