COOK'S BRYAN, INC., et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 381.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Sept. 23, 1970.

Rehearing Denied Oct. 21, 1970.

W. W. Mitchell, II, Berman, Fichtner & Mitchell, Dallas, Elmer McVey, Bryan, for appellants.

W. T. McDonald, Jr., County Atty., Bryan, for appellee.

TUNKS, Chief Justice.

This is an appeal from a judgment of the trial court wherein the appellants, Cook's Bryan, Inc. and Sundaco, Inc., both Texas corporations, pursuant to suit by the State of Texas, were permanently enjoined from operating a retail store in violation of Art. 286a, Vernon's Ann.Tex.P.C.

The appellants herein will sometimes be designated "Cook's" and "Sundaco." The record suggests that Cook's and Sundaco are a part of a complex corporate structure, the full nature of which is not explained by

the evidence. In the pleadings and in the trial court's judgment the appellants are designated "Cook's Bryan, Inc." and "Sundaco, Inc." The store whose operation is in question is operated under the name "Cook's Discount Center." Cook's has some relation with another entity named "Cook's United, Inc." A copy of a newspaper advertisement in evidence identified Cook's as a "division of Cook's United, Inc." Some of the buying for the store in question is done in the name of "M. N. Landau Stores, Inc." whose address is given as 16501 Rockside Road, Cleveland, Ohio. Purchase orders so made direct that shipment be made to "store #664, Cook's Discount Center, 2104 Texas Avenue, Bryan, Texas." The permits to operate the store in question were issued to Cook's Bryan, Inc. and Sundaco, Inc. The manager of the store in question, who testified in the case, was somewhat confused as to the true name of his employer. He testified that he was paid by Cook's United. There was also some confusion as to the true name of the owner of the stock of goods in the store in question.

We are of the opinion, however, that there is sufficient evidence in the record to identify the operators of the store in question as Cook's Bryan, Inc. and Sundaco, Inc. for the purpose of the rendition of the judgment against them from which appeal is taken.

Article 286a, V.A.T.P.C., makes it a misdemeanor for any person to sell certain listed items on two consecutive days of Saturday and Sunday. Section 4 of said statute also provides as follows:

"Sec. 4. The purpose of this Act being to promote the health, recreation and welfare of the people of this state, the operation of any business whether by any individual, partnership or corporation contrary to the provisions of this Act is declared to be a public nuisance and any person may apply to any court of competent jurisdiction for and may obtain an injunction restraining such violation of this Act. Such proceedings shall be guided by the rules of other injunction proceedings."

The trial court filed findings of fact and conclusions of law. The substance of those findings and conclusions is to the effect that the arrangement between Cook's and Sundaco was a sham and subterfuge by which to conceal the violation of Art. 286a and that Sundaco is an agent or "conduit" through which Cook's operates the store and sells the prohibited items on two successive days of Saturday and Sunday in violation of such statute. This appeal by Cook's and Sundaco is largely based upon contentions that those findings and conclusions are "not supported by the evidence."

Cook's is the lessor of premises at 2104 Texas Avenue, Bryan, Texas, where the store in question, a discount type retail department store, is operated seven days a week. Purportedly it is operated by Cook's six days a week—Monday through Saturday—and by Sundaco on Sunday of each week.

On May 13, 1969, Cook's and Sundaco executed an instrument designated as a subleasing agreement under the terms of which Cook's, as sublessor, leased to Sundaco, as sublessee, the premises from which the store in question is operated. The term of such lease is fixed in the following language:

"* * * commencing at 11:59 P.M. o'clock on Saturday next preceding Sunday, May 25, 1969, to midnight Sunday, May 25, 1969, and thereafter during the time and days specified each and every consecutive Saturday and Sunday up to and including May 16, 1970 and May 17, 1970, * * *"

The use to which the premises may be put by the sublessee is limited by the agreement to the operation of a department store. Provision is made for the payment of a cash rental for each Sunday and for prora-

tion, upon percentage bases, of taxes and charges for water, electricity, gas and sewerage connections. The lease contract contains 23 numbered paragraphs and includes many of the provisions usually included in such instruments.

Another instrument executed by the parties contemporaneously with the execution of the sublease is designated "Contract of Sale or Return." In such instrument Cook's is named as seller and Sundaco is named as buyer. By its language Cook's agrees to sell and Sundaco agrees to buy "* * * all of the inventory and stock of goods, wares and merchandise owned by Seller and which shall be located in, on or about the above described premises at 11:59 P.M. on the Saturday next preceding Sunday, May 25, 1969, it being the intention and purpose of this agreement to consummate and effect such sale and transfer as of the time and date aforementioned."

Paragraph 2 of the agreement contains the following language:

"2. Buyer shall pay for said goods, wares and merchandise as follows:

"(a) Out of the total gross sales made by Buyer on the said Sunday immediately following the Saturday upon which it purchases the said goods, wares and merchandise, it shall pay to Seller the following percentage, to-wit: Seventy-Five (75%) Percent * * *."

Paragraph 3 gives the buyer the option, to be exercised on or before 10:00 P.M. Sunday, to return any of the goods bought by it at 11:59 P.M. o'clock the preceding Saturday, such return to effect a resale.

Paragraph 4 provides that if the buyer does not exercise its option to return the stock of merchandise it shall immediately deposit a cashier's check in the amount of $50,000 to secure full payment and shall within ten days make full payment to be computed upon a certain stated cost-plus formula.

Paragraph 5 is in the following language:

"5. In the event Buyer exercises its option to return and resell the said goods, wares and merchandise, it shall have the right to purchase from Seller all of the goods, wares and merchandise owned by Seller in, on or about the above described premises each and every succeeding fifty-one (51) successive Saturdays following May 24, 1969, upon all of the terms, conditions and covenants set forth above and hereinafter set out."

By other language the seller leases to the buyer, on Sundays, the furnishings and fixtures within the store. The buyer is obliged to protect the stock of merchandise and keep it covered by insurance and the buyer assumes the risk of loss or damage by fire or water. It is recited that nothing in the instrument shall render the buyer or seller "a partner, joint venturer, associate, agent or employee" of the other. This, too, is a long instrument having 17 numbered paragraphs.

It is uncontroverted that items of the categories listed in Art. 286a, of which the sale on two successive days of Saturday and Sunday is prohibited, were in fact sold from the store in question on successive Saturdays and Sundays. Two witnesses testified as to having bought such items at the store on both a Saturday and the following Sunday.

■ The only other witness was Mr. Joseph Fournier, the manager of the store, who was called by the State to testify. His testimony can be considered as that of a witness adverse to the State. In fact, when the rule was invoked he was, at the request of the attorney for appellees, excused from the rule as the representative of the corporate appellants. Fournier testified that he was manager of the store for Cook's on six days a week and for Sundaco on the Sundays when he worked. Although his testimony is not entirely clear on the matter apparently he and the assistant manager for Cook's worked for Sundaco on alternate

Sundays. In many instances his testimony was confused and confusing. His answers to some of the questions propounded to him by the State's attorney were evasive. It could be concluded that he concealed and was reluctant to reveal some of the facts with reference to the operation of the store. This aspect of his testimony was a matter to which the court, as the trier of the facts, could give consideration at least to the extent of adding emphasis to the inferences adverse to the positions of his employers to be drawn from facts proved. Gonzales Motor Co. v. Buhidar, Tex.Civ.App., 348 S.W.2d 376, n. r. e.; Mayflower Trust Co. v. Nowell, Tex.Civ.App., 413 S.W.2d 783, err. dismd.; McCormack & Ray, Texas Law of Evidence, 2d Ed., Sec. 100, p. 135; 23 Tex.Jur.2d, Evidence, Sec. 106, p. 147.

Despite Fournier's apparent reluctance to fully explain the store's operation, some of the facts to which he testified are circumstantially evidentiary of the trial court's fact findings He testified that when the operation began in May of 1969 the employees who operated the store on Sunday were people who also worked in the store on week days. In November of 1969, a "separate crew" was hired for Sundays. The reason given by Fournier for this change appears in the following testimony:

Q. "And what was the reason that you changed this?"

A. "To compensate for the hours that I couldn't work both Saturday and Sunday, also the payroll allotment."

Q. "What do you mean by payroll allotment?"

A. "In other words, the people I had working during the week, I could not work them all the way through a complete week, working them Saturday, and stay within my payroll allotment, so therefore I worked them through Saturday, and hired a separate crew for Sunday."

Q. "I'm still not exactly clear on this payroll allotment. Can you elaborate and explain the allotment?"

A. "I am allowed 'X' amount of dollars to spend toward my payroll during the course of the week by Cooks United, and I cannot go over that particular figure."

Q. "Well, what bearing does that have on the people who work on Sunday?"

A. "The people, if worked on Sunday, would have to be given a day off during the week."

Q. "For what reason?"

A. "Because we cannot work both Saturday and Sunday."

Q. "Well, are they working for the same people?"

A. "Well—"

Q. "On Saturday and Sunday?"

A. "No, sir."

Q. "Well, why would this have any bearing on it then?"

A. "It would on my payroll. There has to be time given off during the week; they cannot work seven consecutive days."

Q. "Once again, if they are not working for the same person, why would this have any bearing on it?"

A. "The law constitutes the fact that you cannot work an individual seven days a week."

Q. "Which law is this?"

A. "This Federal or State law."

Q. "Wage and Hour?"

A. "I believe so."

Thus it appears that one employer's payroll allotment provided for payment of the wages of both the weekday personnel and the Sunday "separate crew."

Other facts proven also support the trial court's findings. While the language of the contract does not oblige Sundaco to sell the items of the inventory at specified prices (nor otherwise fix the price at which Cook's sells them to Sundaco), in practice Sundaco sold the items to the public at prices fixed by Cook's for its sales during weekdays. The exception to this general practice was in the offering of items at advertised "Sunday special" prices by Sundaco. Mr. Fournier testified that he learned of these "Sunday special" items by receiving a copy of the newspaper advertisements anouncing them to the public. He was furnished copies of those advertisements from an advertising agency that represented both Cook's and Sundaco.

Some employees performed services for Sundaco while they were on the payroll for Cook's. An employee, at times during the week when she was on Cook's payroll, presented to the County Attorney for prosecution or collection, hot checks payable both to Cook's and to Sundaco. Some of Mr. Fournier's reports to Sundaco were compiled during the week while he was on Cook's payroll.

On Sundays, during the time the store was being operated by Sundaco, various signs inside the store building bearing Cook's name were covered by signs bearing Sundaco's name. The signs outside the store, however, were not changed or covered and continued to show the name of the store to be "Cook's Discount Center."

■ The fact that the arrangement between Cook's and Sundaco took the form of a sale or return, the validity of which is recognized by Sec. 2.326 of the Texas Business and Commerce Code, V.T.C.A., and recited an intention that there be no joint venture or agency relationship is not controlling. To the extent that the trial court's attention was directed toward an inquiry as to the illegality of the arrangement between them the court was permitted to look through the form of their contracts. If the court could find under the evidence that the form of their purported agreement was a subterfuge to conceal their intention to evade the law it was justified in disregarding their formal contract. A. B. Lewis Co. v. National Investment Corp. of Houston, 421 S.W.2d 723, n. r. e.; McCormack & Ray, Texas Law of Evidence, Sec. 1661, p. 510, et seq. It is permissible to show by parol evidence that a written agreement, apparently legal on its face, in fact embodies an illegal agreement. See Commercial Securities Co. v. Rea (Comm.App., op. adopted), 130 Tex. 11, 105 S.W.2d 872; General Southwestern Corporation v. State, Tex.Civ.App., 333 S.W.2d 164, n. r. e.; Standard Supply & Hardware Co. v. Christian-Carpenter Drilling Co., Tex.Civ. App., 183 S.W.2d 657, err. ref.; Ware v. Paxton, Tex.Civ.App., 266 S.W.2d 218, n. r. e.; Schmid v. City National Bank of Wichita Falls, 132 Tex. 115, 114 S.W.2d 854; Vann v. Toby, Tex.Civ.App., 260 S. W.2d 114, n. r. e.; Laird v. Brown, 210 S. W.2d 276, no writ hist.; Burpee Can Sealer Co. v. Henry McDonnell Co., 75 S.W.2d 458, err. ref. In W. T. Raleigh Co. v. Land, 261 S.W. 186, at p. 191 (Affirmed, 115 Tex. 319, 279 S.W. 810, Comm.App.), the Court, holding a contract to be void because it was illegal under the antitrust laws, used the following language particularly applicable to the facts of this case:

" * * * It is not required, in order to render the principal contract void, that the unlawful 'combination' be disclosed by the terms of that contract. It is sufficient if the contract is a part of a covert scheme to conduct a business in an unlawful manner. * * *"

Those making a contract to accomplish an illegal purpose can be expected to try to conceal that purpose. (Jernigan v. Wainer, 12 Tex. 189). One part of the so-called sale or return contract between Cook's and Sundaco strongly suggests an effort on the part of those parties to conceal an illegal purpose to violate Art. 286a. If the contract contained language fixing the price at which Sundaco was to sell the items in the inventory which it "bought"

such language would strongly, if not conclusively, refute the contention that the title to those items passed to Sundaco. Apparently to avoid that result the parties made a contract by the written language of which Sundaco had complete control of the price it was to pay for that which it "bought." For whatever ridiculously low price Sundaco might have sold an item Sundaco was, under the language of the written contract, obligated to pay Cook's only 75% of that price. Sundaco could have, under the language of the contract, sold the entire stock of merchandise for $1,000 and would have owed Cook's only $750.00. The unreasonable nature of that agreement and the fact that Sundaco did actually sell at prices fixed by Cook's (except for certain Sunday "specials" determined by an advertising agency which represented both Cook's and Sundaco), are evidentiary of the finding that the writing did not express the true agreement between the parties.

■ Other evidence supporting such findings are: some of the employees, particularly managerial employees, worked in the store both during the week and on Sunday; the name under which the store operated as shown by the outside signs was "Cook's Discount Center" both during the week and on Sunday; Cook's name was used in the newspaper ads by which the Sunday specials were advertised; some of Cook's employees, during the week and while on Cook's payroll, performed services for Sundaco. Sundaco did not maintain a separate telephone listing but, on Sundays, answered to calls on Cook's telephone; Sundaco accepted delivery of Cook's stock of goods without making any inventory and Cook's accepted the goods returned to it without making any such inventory. The inferences to be drawn from those proven facts constitute evidence in support of the trial court's findings and conclusions that Cook's continued to operate the store on Sundays through Sundaco as its agent or "conduit." Famous Department Store v. State, Tex.Civ.App., 371 S.W.2d 76, no writ hist. Those of appellants' points of error which are based on the contentions that the trial court's findings as to the controlling facts are not supported by the evidence are overruled.

■ By other points of error appellants contend that the injunctive remedy provided by Sec. 4 of Art. 286a is not available as against corporations. Their argument is that Sec. 1 of Art. 286a makes it unlawful for any *person* to sell or force his employees to sell the prohibited items on successive Saturdays and Sundays, that Sec. 4 authorizes an injunction only if there is a violation of the Act, and that a corporation, not being a *person*, under Texas criminal law, cannot violate the criminal statute. Those points of error are overruled. The remedy of injunction provided in Sec. 4 of Art. 286a is available against a corporation which, acting through its employees, sells the prohibited items on two successive days of Saturday and Sunday. Ralph Williams Gulfgate Chrysler-Plymouth v. State, Tex.Civ.App., 451 S.W.2d 267, writ ref., n. r. e.

■ Appellants seek reversal upon the ground that the trial court's judgment of injunction did not give the reasons for the injunction as required by Rule 683, Texas Rules of Civil Procedure. The cases cited in support of this point are all cases of an appeal from a temporary injunction. The judgment in the instant case is a permanent injunction. There is authority for the proposition that Rule 683 does not require that the court state a reason for a judgment for permanent injunction, as distinguished from an ancillary, temporary injunction. Alexander Schroeder Lumber Co. v. Corona, Tex.Civ.App., 288 S.W.2d 829, n. r. e. Furthermore, the trial court filed comprehensive findings of fact and conclusions of law fully informing the appellants of the factual and legal basis for its injunctive judgment. If it were error for the court not to include its reasons in its decree, the error was harmless. Transport Co. of Texas v. Robertson

Transports, 152 Tex. 551, 261 S.W.2d 549; Rule 434, T.R.C.P.

■ Finally, by point of error the appellants contend that the State is bound in this case by a decree in another district court in another county wherein the State of Texas was denied an injunction against Sundaco, Inc. and other parties upon allegations of violations of Art. 286a in the operation of another store. That point is overruled. There is nothing in this record showing that that case involved the same issues as were involved in this case. Also res judicata is an affirmative plea that must be specially pled. Rule 94, T.R.C.P. No such defense was pled in this case.

The judgment of the trial court is affirmed.